No. 14,370.

## KELLER v. THE B. F. GOODRICH COMPANY.

TRADE-MARK.—*Infringement.*—*Injunction.*—A label containing the words "Non-Secret Dental Vulcanite, made according to our analysis of the Akron Dental Rubber"—the last three words being printed in a different colored ink from the rest of the label, with large type, and conspicuously displayed—is an infringement upon a trade-mark containing the words "The Akron Dental Rubber," and injunction will lie to prevent its use.

SAME.—*Intent to Deceive.*—*Presumption.*—Where a trade-mark is used for the purpose of securing a benefit at the expense of its owner, and is not used in good faith for the purpose of explanation or information, the just presumption is that the person so using the trade-mark intends to deceive, and that he will probably succeed in his purpose, and the courts will restrain such use.

SAME.—*Similitude in Substantial Parts.*—When the similitude is in the substantial parts of a trade-mark there is an infringement, and an evasive attempt to hide the similarity, or a colorable explanation, which appears to be made for the purpose of escaping the effect of a wrongful use of the trade-mark, will not defeat the owner's right to an injunction.

SAME.—*Evidence.*—*Quality of Articles.*—In a contention as to the infringement of a trade-mark, evidence as to the quality of the articles manufactured by the respective parties is not material.

TORT.—*Action for.*—*Defence.*—*Set-Off.*—*Counter-Claim.*—An independent tort can not be made a defence against another tort, either by way of set-off or counter-claim.

DEPOSITION.—*Contumacious Witness.*—*Coercion and Punishment.*—Where a witness under examination before an officer not having power to punish for contempt refuses to answer a proper question, the officer should report to a court having jurisdiction, and ask it to compel an answer or punish the contumacious witness. The deposition can not be suppressed on that account.

SAME.—*For Use in Other State.*—*Assistance of Courts.*—The courts of the State where a deposition is taken to be used in another State, will exercise their authority, when appropriately invoked, to secure competent testimony, and will assist an officer within their jurisdiction, when assistance is properly asked, to secure answers to competent questions.

From the Allen Circuit Court.

*R. S. Robertson,* for appellant.

*W. P. Breen, R. C. Bell* and *S. L. Morris,* for appellee.

Keller *v.* The B. F. Goodrich Company.

ELLIOTT, J.—The appellee is and long has been engaged in the manufacture and sale of an article used in dentistry, and the trade-mark, printed upon each box or package, is " The Akron Dental Rubber." The appellant is engaged in the same line of business, and manufactures and sells an article which he claims is the same as that manufactured and sold by the appellee. He puts the articles in boxes of a different shape and material from those used by the appellee, and has printed on them these words: " Non-Secret Dental Vulcan-ite, made according to our analysis of the Akron Dental Rub-ber." The words preceding the words " Akron Dental Rubber " are printed in black ink and large type. The words " Akron Dental Rubber " are printed in red ink, the type is large and the words are prominently displayed. They are so printed and arranged as to readily and quickly catch the eye. They are followed by the formula for the prepara-tion of the article, also printed in red ink, but in very small type.

The contention of the appellee, which prevailed below, is, that in using the words " Akron Dental Rubber," as the ap-pellant did, he infringed its trade-mark; the appellant, on the other hand, contends that there was no infringement be-cause the label used by him does not assert that the article is the " Akron Dental Rubber," but informs the public that it is a non-secret vulcanite, manufactured according to an an-alysis of the " Akron Dental Rubber," and that the similarity is not such as is likely to mislead.

We should, perhaps, be able to sustain the views of the appellant's counsel if it were not that the words constituting the appellee's trade-mark are printed in colors that attract attention at once, and are so prominently displayed as to catch and hold the eye.

What should be the rule where the use of a trade-mark is made by a rival in business of the owner of the mark for the simple purpose of apprising the public that his (the rival's) article is manufactured from the same formula as that used

by the owner of the trade-mark, and this information is so given as to fairly indicate that the words are in good faith used solely for the purpose of imparting information, we need not inquire or decide, for we are satisfied that it must be adjudged that the appellant has not so used the words constituting the trade-mark of the appellee as to indicate that he employed them in good faith, and for the sole purpose of informing dealers that the article is prepared according to the formula used by the appellee. The manner in which the words that form the appellee's trade-mark are printed is such as to make them very conspicuous, thus indicating the purpose of the appellant to reap some advantage from the trade-mark, and not merely to impart information. If the object had been to impart information simply, it is evident that no such prominence would have been given those words. As a matter of law, the judgment must be that the words, as used and printed by the appellant, are likely to mislead dealers, and that they indicate the purpose of the appellant to secure an advantage from the use of the words constituting the trade-mark. Adjudging, as we do, that this effect must be attributed to the mode of printing and displaying the trade-mark, we can not avoid the conclusion that the appellant has invaded the rights of the appellee.

The words so prominently displayed are not simply words of similar sound and meaning as those chosen by the appellee, but they are the identical words. It is true that other words are associated with them, but the words of the trade-mark are so prominently displayed, arranged and printed as to make it appear that they designate the article contained in the box or package, thus indicating that they were used for the purpose of conveying information as to the composition of the article manufactured by the appellant. The trade-mark is given the prominent position, and the other words are placed in subordinate ones. It is easy to perceive that the words "Akron Dental Rubber" might well be taken as designating the article sold by the appellant, and thus de-

ceive purchasers. As we have shown, the purpose of the appellant in so conspicuously displaying the trade-mark adopted by his competitor, was not to enable him to explain the method of manufacturing the product he offered for sale, and as this was not his purpose, the only reasonable hypothesis upon which his conduct can be accounted for is, that his purpose was to secure an advantage from the use of his rival's trade-mark. Either his purpose was to explain, or it was to wrong his competitor; it was not his purpose to explain, and, therefore, it must have been his purpose to do injury to his competitor.

As it was the purpose of the appellant to do wrong, it is the duty of the courts to prevent its accomplishment, since to do otherwise would be to permit a wrong-doer to secure an advantage from his own wrong. This conclusion, with all its necessary incidents, results when it is affirmed that this was the appellant's purpose, and if that was his purpose, he should not be permitted to persist in a course that may probably result in loss to his competitor or in the deception of others. Where it appears that a trade-mark is used for the purpose of securing a benefit at the expense of its owner, the person who uses it must be presumed, unless the contrary appears, to intend to deceive dealers, and if this intention does appear, or is to be presumed, it should be held that what is intended will probably result. Where, therefore, it appears that the trade-mark was used to secure benefit to the user at the expense of the owner, and that it was not simply used in good faith for the purpose of explanation or information, the just presumption is that the person so using the trade-mark intends to deceive, and that he will probably succeed in his purpose. This being true, the courts should restrain him from persisting in his wrong.

It is difficult, if not impossible, to deduce any general rule from the decisions under which a particular case can be placed. As held by Mr. Justice BRADLEY, in *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed. Rep. 94, " each case must be de-

termined on its own circumstances." It was held in that case that the defendant, by employing the words " Cellonite Manufacturing Company," infringed the trade-mark " Celluloid Manufacturing Company," the court saying, among other things, that " Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law."

In *Wotherspoon* v. *Currie,* L. R. 5 H. L. 508, the labels are set forth, and an inspection of them clearly shows that the infringement was not so clearly apparent as in the case before us, yet it was held that the complainant was entitled to an injunction. There is one passage in the opinion in that case which so forcibly applies to the present that we quote it : " There is," said the Lord Chancellor, " a passage in the respondent's answer in which he says : ' There is no reason in the world why I should take the name, because I manufacture something superior, and at a cheaper price, therefore why should I take the name of the plaintiffs ?' Well, then, one naturally asks, why should he do anything to lead people to suppose that his name is to be in any way associated with Glenfield, or this inferior article (as he says) with his." So may we ask here, why should the appellant, doing business in Fort Wayne, Indiana, do anything to associate his name with Akron, in the State of Ohio ? The natural presumption is that he expected to derive benefit from it, and secure buyers from among those who had bought and used the Akron dental rubber. If we may assume, as we justly may, that he intended to mislead, and not in good faith to convey information, we must carry this assumption to its logical consequences, and assert that his act was likely to accomplish what he intended it should.

The case from which we have quoted is approved and followed in *Johnston* v. *Ewing*, Law Rep. 7 App. Cas. 219, and of it the court said : " In the Glenfield Starch Case, *Wotherspoon* v. *Currie*, the difference between the two labels was very obvious to the eye, even upon the most cursory inspection ; and they were both intended for markets where the English language (in which they were throughout written) was understood. But the use of the characteristic word ' Glenfield' was enough for the purposes of deception."

The labels used by the opposing parties appear at full length in *Metcalfe* v. *Brand*, 5 S. W. Rep. 773, and the similarity between them was not so great as between the labels before us, yet an injunction was awarded. We collect and cite, without comment, other cases which support our conclusion : *Siegert* v. *Findlater*, L. R. 7 Ch. Div. 801 ; *McAndrew* v. *Bassett*, 10 Jurist, N. S. 550 ; *Newman* v. *Alvord*, 51 N. Y. 189 ; *Edelsten* v. *Edelsten*, 1 De G. J. & S. 185 ; *McCartney* v. *Garnhart*, 45 Mo. 593 ; *Partridge* v. *Menck*, 2 Barb. Ch. 101.

We conclude this branch of the case by affirming that where the similitude is in the substantial parts of a trademark there is an infringement, and that an evasive attempt to hide the similarity, or a colorable explanation which appears to be made for the purpose of escaping the effect of a wrongful use of the trade-mark, will not defeat the owner's right to an injunction.

It is settled upon sound principle that an independent tort can not be made a defence against another tort, either by way of set-off or counter-claim. *Standley* v. *Northwestern M. L. Ins. Co.*, 95 Ind. 254 ; *Terre Haute, etc., R. R. Co.* v. *Pierce*, 95 Ind. 496 ; *Sterne* v. *First National Bank*, 79 Ind. 560 ; *Washburn* v. *Roberts*, 72 Ind. 213 ; *Shelly* v. *Vanarsdoll*, 23 Ind. 543 ; *Lovejoy* v. *Robinson*, 8 Ind. 399 ; *Conner* v. *Winton*, 7 Ind. 523. The decisions are harmonious, and they

are right. The rule they declare supports the ruling of the trial court upon the appellant's counter-claim.

Corson, one of the witnesses for the appellee, after having testified that the article manufactured by the appellant was inferior to that manufactured by the appellee, was asked whether the formula from which it was prepared was not the same as that used by the appellant, and he declined to answer, because to answer would be to reveal a trade secret. The appellant moved to suppress the entire deposition of the witness. The rule for which appellant contends would result in punishing the party, and not the witness, and the modern rule in analogous cases is not to make the party suffer, but to punish the contumacious witness. *State, ex rel.,* v. *Thomas,* 111 Ind. 515, and authorities cited. We are not now prepared to assent to the views of appellant's counsel on this question of procedure; we are, on the contrary, inclined to the opinion that the rule of procedure is this: Where a witness under examination before an officer not having power to punish for contempt refuses to answer a proper question, the officer should report to a court having jurisdiction, and ask it to compel an answer or punish the contumacious witness. On the principle of comity, the courts of the State where a deposition is taken to be used in another State will exercise their authority, when appropriately invoked, to secure competent testimony, and will assist an officer within their jurisdiction, when assistance is properly asked, to secure answers to competent questions. We doubt very much whether the witness was, in any event, bound to answer the question, since an answer would have disclosed a trade secret. A manufacturer who has discovered a method of preparing a valuable article has a property in his discovery, and to compel him to make known his process might entirely destroy the value of that property. There are authorities affirming that a witness is not bound to disclose the trade secrets, but we do not decide the question of their applicability, as we have concluded that the question arising on the denial

of the appellant's motion may be otherwise disposed of, and the appeal be adjudged not maintainable. Our judgment on this point is, that the evidence as to the quality of the articles manufactured by the respective parties was not material, and, if not material, its admission could not have harmed the appellant. It is not important which manufactures the better article, for, if the trade-mark of the appellee was valuable to him, the appellant had no right to use it. Whether his article was superior or inferior is, therefore, immaterial. Its superiority, if conceded, would not entitle him to invade his competitor's rights by appropriating his trade-mark. On this point the authorities are well agreed.

Judgment affirmed.

Filed Dec. 21, 1888; petition for a rehearing overruled Feb. 16, 1889.