BRIDGESTONE AMERICAS HOLD-ING, INC., Bridgestone/Firestone, Inc., Bridgestone/Firestone North American Tire, LLC and Bridge-stone/Firestone Manufacturing Operations Division, Appellants–Defendants,

v.

Violet MAYBERRY, as Personal Representative of the Estate of Harmony B. Wigley, and Audrey E. Wigley, as Mother of Harmony B. Wigley, deceased, Appellees–Plaintiffs.

No. 48A02–0504–CV–368.

Court of Appeals of Indiana.

Aug. 31, 2006.

Rehearing Denied Nov. 8, 2006.

Mark J.R. Merkle, Marc T. Quigley, Krieg DeVault LLP, Indianapolis, IN, Attorneys for Appellants.

Jon Laramore, D. Lucetta Pope, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Amicus Curiae.

Peter Campbell King, Donna L. Marsh, Cline, King & King, P.C., Columbus, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Bridgestone Americas Holding Inc., Bridgestone/Firestone, Inc., Bridgestone/Firestone North American Tire, LLC, and Bridgestone/Firestone Manufacturing Operations Division (collectively "Bridgestone") bring this interlocutory appeal to challenge the trial court's order compelling discovery of Bridgestone's highly proprietary skim stock formula.[1] Bridgestone presents three issues for our review, which we consolidate and restate as whether the trial court abused its discretion when it ordered Bridgestone to disclose its skim stock formula.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On August 7, 2001, Harmony B. Wigley ("Harmony") died in an automobile accident when she lost control of her vehicle on Interstate 69 in Madison County. Following her death, Harmony's sister and mother, Violet Mayberry and Audrey Wigley, respectively, filed a complaint for damages against Bridgestone alleging that the accident occurred because one of the tires on Harmony's vehicle experienced a tread separation. During the course of discovery, Mayberry requested that Bridgestone produce certain documents, namely, its skim stock formula for the rubber coating compound used to cover the steel belts of the tire at issue. In response to Mayberry's discovery request, Bridgestone filed a motion for a protective order claiming that its "skim stock" formula is entitled to protection as a trade secret. Following a

---

1. Bridgestone defines "skim stock" as a rubber compound specially formulated to cover the sheets of steel cord to form the steel belts in a steel belted radial tire. Brief of Appellant at 1.

hearing, the trial court issued an order compelling discovery of Bridgestone's formula. The trial court's order consists, in relevant part, of the following:

> [T]he Defendant has argued that the "[skim stock]" information is a confidential or secret formula, which the Defendant protects from its competitors. Plaintiff has argued that such information is necessary in the effective preparation and presentation of its case. The Court finds that after considering all of the evidence and arguments of counsel, that the Defendant has failed to establish why [its skim stock formula] should not be made available as part of the discovery process.
>
> In light of the fact that the Court has denied the request for a sharing protective order and the Court's intent to severely restrict the present order, said information is not to be shared with any person not directly an employee, litigant or expert employed by the parties. Furthermore, no expert consulted by or employed by Plaintiff shall be permitted to retain, disseminate or otherwise utilize such discovery material on behalf of any other person, entity or group other than Plaintiff. Any violation will be treated as a serious matter subjecting that person to potential severe punishment for contempt of court.

Appellant's App. at 13–14.

Thereafter, Bridgestone sought certification of that interlocutory order, and the trial court certified the order and entered a stay. On April 29, 2005, Bridgestone filed a Petition for Acceptance of Interlocutory Appeal with this court, and on July 15, 2005, the motions panel denied that motion.[2]

Then, on August 12, 2005, Bridgestone petitioned this court for rehearing. In its order granting Bridgestone's petition for rehearing, a second motions panel noted that Indiana Appellate Rule 54 does not allow a party to seek rehearing from a decision denying a motion to accept jurisdiction over an interlocutory appeal. Still, the second motions panel concluded that "this Court has inherent authority to reconsider any decision while an appeal remains in fieri." Appellee's App. at 119. The second motions panel reconsidered and granted Bridgestone's motion for acceptance of interlocutory appeal.

## DISCUSSION AND DECISION

### Issue One: Jurisdiction

First, we address Mayberry's contention that we do not have jurisdiction to consider this appeal. Specifically, she claims that because the first motions panel refused to accept jurisdiction of Bridgestone's discretionary interlocutory appeal, the second motions panel did not have jurisdiction to reconsider and grant Bridgestone's petition for rehearing. We cannot agree.

▮▮▮ "It is the duty of this Court to determine whether we have jurisdiction before proceeding to determine the rights of the parties on the merits." *Allstate Ins. Co. v. Scroghan*, 801 N.E.2d 191, 193 (Ind. Ct.App.2004), *trans. denied.* Further, a court always has jurisdiction to consider its own jurisdiction. *Schoffstall v. Failey*, 180 Ind.App. 528, 530, 389 N.E.2d 361, 363 (Ind.Ct.App.1979) (citation omitted). Indeed, it is not uncommon for our appellate courts to raise the question of jurisdiction in a particular case. *See e.g., Young v. Estate of Sweeney*, 808 N.E.2d 1217, 1219–20 (Ind.Ct.App.2004) (purported interlocu-

---

**2.** Under Appellate Rule 14(B), a party who seeks a discretionary interlocutory appeal files a motion, not a petition.

tory appeal dismissed sua sponte for lack of jurisdiction for failure to comply with Appellate Rule 14).

Our Rules of Appellate Procedure provide that we have jurisdiction over interlocutory orders only under the conditions described in Appellate Rule 14. *Id.* at 1219. Under Rule 14, there are three ways we may obtain jurisdiction over an interlocutory appeal: (1) Rule 14(A) allows interlocutory orders as of right; (2) Rule 14(B) permits discretionary appeals "if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal"; and (3) Rule 14(C) authorizes other interlocutory appeals only as provided by statute. *Scroghan,* 801 N.E.2d at 193. Because Rule 14(A) and (C) do not apply to the present case, our jurisdiction over this appeal is discretionary and must derive from Rule 14(B).

Here, the trial court certified its order, but the first motions panel denied Bridgestone's request to accept jurisdiction of the appeal. Bridgestone filed a petition for rehearing. A second motions panel then granted Bridgestone's petition and accepted jurisdiction of the interlocutory appeal under Appellate Rule 14(B). The second motions panel concluded that, "this Court has inherent authority to reconsider any decision while an appeal remains in fieri." Appellee's App. at 119. But Mayberry claims that when the first motions panel refused to accept jurisdiction over Bridgestone's interlocutory appeal, the second motions panel was without jurisdiction to grant Bridgestone's petition for rehearing. Thus, according to Mayberry, we are without jurisdiction to consider the merits of the present appeal.

■ Again, Appellate Rule 14(B) states: "[a]n appeal may be taken from ... interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." The rule clearly states that the only prerequisite for this Court to accept a discretionary interlocutory appeal is certification of the order by the trial court. Here, the trial court certified its order compelling discovery, and Bridgestone filed a motion with this Court to accept jurisdiction of the appeal. While the first motions panel declined to accept jurisdiction, the second motions panel exercised its inherent authority to reconsider the ruling of the first motions panel. It then granted Bridgestone's motion and accepted jurisdiction. Therefore, the two requirements of Rule 14(B) were satisfied.

We considered the same issue in *Lohm v. State,* 177 Ind.App. 488, 489, 380 N.E.2d 561, 562 (Ind.Ct.App.1978).[3] There, too, we first refused to accept jurisdiction and then granted appellant's petition for rehearing and accepted jurisdiction of the discretionary interlocutory appeal. But Mayberry relies on *Oxford Financial Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1141 (Ind.Ct.App.2003), for the proposition that this court will not reconsider a ruling by the motions panel in the absence of clear authority establishing that it erred as a matter of law. Mayberry's reliance on *Oxford Financial* is misplaced.

■ *Oxford Financial* can be readily distinguished. First, the question in *Oxford Financial* was whether the panel of judges assigned to decide an appeal can review a previous ruling made by the motions panel, and it was in that procedural context that *Oxford Financial* enunciated the "erred as a matter of law" standard.

**3.** We note that when this court decided *Lohm,* the appellate rule in effect allowed "rehearing of any cause." *See* App. R. 11(A) (1978).

Here, the issue is whether a motions panel can revisit a ruling by a previous motions panel while the matter remains in fieri.[4]

Second, and more importantly, in this context the *Oxford Financial* "error as a matter of law" standard for reconsideration of a previous ruling simply does not apply. When the trial court has properly certified an interlocutory order, and the motion is otherwise submitted according to the Appellate Rules, our decision whether or not to accept a discretionary interlocutory appeal is entirely discretionary. Thus, in its petition for rehearing, Bridgestone was not required to show and, indeed, could not show, that the first motions panel had erred.

Still, Mayberry alleges that Indiana Appellate Rule 54(A) does not allow a party to petition for rehearing from a refusal to accept jurisdiction of a discretionary interlocutory appeal. The rule does, however, permit a petition for rehearing from "an order dismissing an appeal." App. R. 54(A)(3). Here, the first motions panel's refusal to accept jurisdiction of Bridgestone's discretionary interlocutory appeal is the functional equivalent of an order dismissing an appeal. That is, our refusal to accept jurisdiction has the same practical effect on litigants as an order dismissing an appeal. Thus, because Bridgestone petitioned for rehearing within 30 days of the first motions panel's order, and there is no evidence that the trial court had lifted the stay and had reassumed jurisdiction, the second motions panel was not precluded from reconsidering and accepting jurisdiction of Bridgestone's interlocutory appeal.

We emphasize that this court will not entertain routine repetitive motions to accept or oppose discretionary interlocutory appeals. In fact, successive motions for discretionary interlocutory appeals are disfavored. But in rare instances reconsideration of motions to accept or oppose discretionary interlocutory appeals may be appropriate, such as where a successive motion demonstrates good cause why the motions panel's initial ruling should be reconsidered. Here, it is apparent that the second motion was made for good cause as it makes plain the need for this court to address the operation of protective orders under Trial Rule 26(C) as applied to trade secrets since there is no Indiana case directly on point.[5] Further, Bridgestone seems to contend that Indiana Trial Rule 26(C)(7) provides an absolute privilege from the disclosure of trade secrets during discovery where, indeed, no such privilege exists. Thus, under these circumstances, we see no reason to second-guess the mo-

---

4. Mayberry claims that "the concept of in fieri is related to final judgment[s][and] applies only to the trial court where judgment is entered." Brief of Appellee at 11. We cannot agree. Appellate courts possess the same inherent power to reconsider an order or ruling until an opinion has been certified. No opinion of this court is certified as final until the time periods for rehearing and transfer have passed, or such petitions have been denied. *See* App. R. 65(E). Further, while a trial court may retain jurisdiction during an interlocutory appeal, *see Clark v. State*, 727 N.E.2d 18, 21 (Ind.Ct.App.2000), *trans. denied*, here, the trial court entered a stay pending "certification and acceptance of jurisdiction by the Indiana Court of Appeals[,]" Appellee's App. at 82, and there is no evidence in the record that the trial court has lifted the stay.

5. We recently noted that a party unable to appeal an order compelling the discovery of documents often "has few options since complying with the court's discovery order, proceeding through a trial, and ultimately winning on appeal would be a hollow victory indeed when the information sought to be protected would then already have been disclosed." *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 322 (Ind.Ct.App.2006).

tions panel, and we proceed to the merits of this appeal.

**Issue Two: Protective Order**

■ Bridgestone first maintains that the trial court abused its discretion when it required Bridgestone to demonstrate why its skim stock formula should not be subject to discovery. Specifically, Bridgestone claims that the trial court placed "the burden of persuasion on [Bridgestone], rather than shifting the burden to [Mayberry] to establish that the trade secret formula is both relevant and necessary to [her] case." Brief of Appellant at 14. We cannot agree.

■■ The standard of review in discovery issues is an abuse of discretion. *Stuff v. Simmons,* 838 N.E.2d 1096, 1099 (Ind. Ct.App.2005) (citing *Old Ind. Ltd. Liability Co. v. Montano ex rel. Montano,* 732 N.E.2d 179, 183 (Ind.Ct.App.2000), *trans. denied* ), *trans. denied.* An abuse of discretion occurs when a trial court reaches a conclusion that is against the logic and natural inferences that can be drawn from the facts and the circumstances before the trial court. *Id.* Moreover, an abuse of discretion occurs when the trial court misinterprets or misapplies the law. *Id.*

Rule 26(C) provides:

Upon motion by any party or by the person from whom discovery is sought, and *for good cause shown,* the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\* \* \*

(7) that a trade secret or other confidential research, development, or commer-

cial information not be disclosed or be disclosed only in a designated way[.]

Ind. T.R. 26(C)(7) (emphasis added). Thus, Rule 26(C) mandates that the party seeking a protective order show "good cause" for its necessity. *Id.; see also Hamilton v. State Farm Mut. Auto. Ins. Co.,* 204 F.R.D. 420, 424 (S.D.Ind.2001) (noting that the party seeking a protective order must demonstrate that good cause exists). And, here, because Bridgestone sought a protective order for its skim stock formula, it had the burden to establish "good cause" for such an order. *See* T.R. 26(C). Therefore, we cannot say that the trial court abused its discretion when it found that Bridgestone "failed to establish why [its formula] should not be made available as part of the discovery process." Appellant's App. at 14.

Next, Bridgestone contends that it established that its skim stock formula is a closely guarded trade secret and entitled to a protective order. Specifically, it contends that it "presented uncontroverted facts to support its trade secret claim," and Mayberry presented no evidence to contradict that assertion. Brief of Appellant at 10. Therefore, according to Bridgestone, "[t]he trial court's failure to designate [Bridgestone's] skim stock [formula] as a trade secret is tantamount to an abuse of discretion." *Id.* at 14. Again, we cannot agree.

■ The Indiana Uniform Trade Secrets Act defines a "trade secret" as information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind.Code § 24–2–3–2. Thus, a protectable trade secret has four characteristics: (1) information, (2) which derives independent economic value, (3) is not generally known, or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (4) the subject of efforts reasonable under the circumstances to maintain its secrecy. *United States Land Servs. v. United States Surveyor, Inc.*, 826 N.E.2d 49, 63 (Ind.Ct.App.2005). The determination of whether information is a trade secret is a fact sensitive determination. *Id.* The burden of proof is on the party asserting the trade secret to show that it is included in the categories of protectable trade secret information listed in the trade secrets statute. *Id.* Thus, the burden is on Bridgestone to prove that its "skim stock" formula is a protectable trade secret, as defined by Indiana Code Section 24–2–3–2.

Because Indiana has adopted the Uniform Trade Secrets Act, and because the Act is to "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject matter of this chapter among states enacting the provisions of [the Act]", Indiana Code Section 23–2–3–1(b), we can turn to other jurisdictions which have also adopted the Uniform Act for guidance. *Zemco Mfg., Inc. v. Navistar Int'l Trans. Corp.*, 759 N.E.2d 239, 246 (Ind.Ct.App.2001), *trans. denied.* By definition, information is a trade secret only if it is the subject of reasonable efforts to maintain its secrecy. *Id.;* Ind.Code § 24–2–3–2. The owner of the alleged trade secret must take reasonable, though not overly extravagant, measures to protect its secrecy. *Zemco Mfg., Inc.,* 759 N.E.2d at 246.

■■ We need not, however, analyze whether Bridgestone's skim stock formula constitutes a trade secret. That is, even if we were to accept as true Bridgestone's claim that its skim stock formula is a trade secret and that disclosure might be harmful, it does not follow that the trial court abused its discretion when it did not specifically designate it as such or wholly shield it from discovery. "It is well established that trade secrets are not absolutely privileged from discovery in litigation." *Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co.*, 107 F.R.D. 288, 292 (D.Del.1985). Further, "[t]he courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure." *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C.Cir.1999) (citation omitted). Thus, "[w]here a party seeking a protective order has shown that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary to its case." *American Std., Inc. v. Pfizer*, 828 F.2d 734, 741 (Fed.Cir.1987).

■ "[T]he governing relevance standard that the movant must satisfy is the broad relevance standard applicable to pre-trial discovery, i.e., the movant must show that the material sought is relevant to the subject matter of the lawsuit." *Coca–Cola,* 107 F.R.D. at 293 (citations omitted). "The level of necessity that must be shown is that the information must be necessary for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories." *Id.* (citations omitted).

■ In the present case, Mayberry maintains that Bridgestone's skim stock formula is relevant to her case, in part,

because the tread separated from the tire on Harmony's car, which caused the fatal accident. Further, Mayberry contends that "[w]hether [Bridgestone] used appropriate measures in the design, manufacture, and testing of the subject tire is relevant to the ultimate determination [in her case]." Brief of Appellee at 21. She also claims that the formula is necessary for experts to evaluate how the manufacture of the tire contributed to Harmony's death. In particular, Mayberry provided a report from James D. Gardner, an engineering consultant, in which he explained that "[t]he particular compound chosen for a tire tread depends on the performance and handling characteristics required. Some compounds may provide advantages in resisting cutting and tearing while others may be advantageous for traction." Appellant's App. at 168.

Bridgestone, however, alleges that while Mayberry "argue[d] that the trade secret formula is relevant and knowledge of the tread compounds is vital[,]" she "made no effort to establish that the formula is necessary to [her] case." Brief of Appellant at 15. But the record reveals that Mayberry sought Bridgestone's skim stock formula to prove that it was defective and, as a result, the company has subsequently altered the formula. Specifically, Mayberry alleged that the formula is necessary to prove that Bridgestone's skim stock was defective, and that when and how the formula changed is relevant to "how, when, and where" she proves the tire defect. Appellant's App. at 40.

Bridgestone claims that Gardner's report is insufficient to establish that Mayberry's request for the skim stock formula is relevant and necessary because Gardner rendered his report for a different case under different circumstances. Specifically, Bridgestone contends that Gardner's report refers to a tread compound of a different tire, not the skim stock of the tire at issue in this case. Further, Bridgestone alleges that because the composition of the rubber compounds are chemically changed during the vulcanization process, its skim stock formula cannot serve as a basis for comparison to determine whether the tire was properly manufactured and, therefore, it is not relevant and necessary to Mayberry's case. While "it is possible that another court may have exercised its discretion differently[,] because of the fact-sensitive nature of discovery matters, the trial court's ruling here is cloaked with a strong presumption of correctness on appeal." *Scroghan,* 851 N.E.2d at 323. And again, we may not reweigh the evidence or assess witness credibility. *See id.* at 321–22. Therefore, we cannot say that Mayberry failed to establish that Bridgestone's skim stock formula is "reasonably necessary" for Mayberry to have a "fair opportunity to develop and prepare her case for trial." *See American Std., Inc.* 828 F.2d at 743 (citing *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed.Cir. 1986)).

 Once relevancy and need have been established, the trial court must balance the need for the information against the injury that would ensue if disclosure were ordered. *Coca–Cola,* 107 F.R.D. at 293 (citing *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979)). This balance typically tilts in favor of disclosure. *Id.* "Because protective orders are available to limit the extent to which disclosure is made, the relevant injury to be weighed in the balance is not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order." *Id.* In this regard, it is presumed that disclosure to a party who is not in competition with the holder of the trade

secret will be less harmful than disclosure to a competitor. *Id.* (citing *United States v. United Fruit, Co.,* 410 F.2d 553, 556 (5th Cir.1969), *cert. denied,* 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969)). Indeed, the Supreme Court has recognized that "orders forbidding any disclosure of trade secrets or confidential commercial information are rare." *Fed. Open Mkt. Comm.,* 443 U.S. at 362 n. 24, 99 S.Ct. 2800.

Bridgestone claims that it "will be irreparably and immeasurably harmed by disclosure of the skim stock formula." Brief of Appellant at 18. It also maintains that Rule 26(C)(7) mandates that the trial court first consider prohibiting disclosure. Once more, we cannot agree.

■ It is well settled that the trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.* Further, Rule 26(C) provides that a trial court "may make any order which justice requires to protect a party or person[.]" T.R. 26(C). Contrary to Bridgestone's assertion, the rule does not mandate that a trial court first prohibit disclosure altogether. *See Diamond Ventures, LLC v. Barreto,* 452 F.3d 892, 898 (D.C.Cir.2006) ("[Federal] Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly[.]") (quoting *Crawford–El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)). Indeed, "[u]se limitations are not unusual in protective orders[.]" *Id.* at 898 n. 9 (citing 8 Wright and Miller, Federal Practice and Procedure § 2043 n. 21 (2d ed.1987)). Recently, in *Scroghan,* we remanded and directed entry of a protective order with detailed

use limitations. *See Scroghan,* 851 N.E.2d at 325–26.

And, again, in the present case, the trial court barred disclosure of Bridgestone's skim stock formula to

> any person not directly an employee, litigant or expert employed by the parties. Furthermore, no expert consulted by or employed by Plaintiff shall be permitted to retain, disseminate or otherwise utilize such discovery material on behalf of any other person, entity or group other than Plaintiff.

> Any violation will be treated as a serious matter subjecting that person to potential severe punishment for contempt of court.

Appellant's App. at 13–14. To convince us that the trial court abused its discretion, Bridgestone must demonstrate that the trial court's conclusion is against the logic and natural inferences that can be drawn from the facts and circumstances before the court. *See Stuff,* 838 N.E.2d at 1099. Bridgestone has not met this burden on appeal. Therefore, we cannot say that the trial court abused its discretion when it fashioned a narrowly tailored protective order under Rule 26(C)(7) and compelled Bridgestone to disclose its skim stock formula.

We affirm.

SHARPNACK, J., and ROBB, J., concur.