ATTORNEYS FOR APPELLANTS
Mark J.R. Merkle
Marc T. Quigley
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA LEGAL FOUNDATION
Jon Laramore
April E. Sellers
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Peter Campbell King
Columbus, Indiana

# In the
# Indiana Supreme Court

No. 48S02-0703-CV-120

BRIDGESTONE AMERICAS HOLDING, INC.,
BRIDGESTONE/FIRESTONE, INC.,
BRIDGESTONE FIRESTONE NORTH AMERICAN
TIRE, LLC, AND BRIDGESTONE/FIRESTONE
MANUFACTURING OPERATIONS DIVISION,

*Appellants (Defendants below),*

v.

VIOLET MAYBERRY, PERSONAL
REPRESENTATIVE OF HARMONY B. WIGLEY,
AND AUDREY E. WIGLEY, AS MOTHER OF
HARMONY B. WIGLEY, DECEASED,

*Appellees (Plaintiffs below).*

Appeal from the Madison Superior Court, No. 48D03-0307-PL-656
The Honorable Thomas Newman, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 48A02-0504-CV-368

**December 18, 2007**

**Shepard, Chief Justice.**

We encounter here a question of first impression: how should an Indiana court analyze a request to protect a trade secret from pre-trial discovery?  We conclude that the test prevailing in other jurisdictions is suitable for application under Indiana Trial Rule 26(C).

In this case, the demanding party did not demonstrate the necessity of disclosing the secret.  Hence, the trial court erred in ordering it produced.

## Facts and Procedural History

On August 7, 2001, Harmony Wigley lost control of her 1992 Ford Escort while driving on Interstate 69 in Madison County.  Her car struck another vehicle, resulting in her own death. Appellees Violet Mayberry, personal representative of Harmony's estate, and Audrey Wigley, Harmony's mother, filed a product liability action against several Bridgestone and Firestone companies (collectively "Bridgestone") alleging that a tire's tread separation caused the accident.

During pre-trial discovery, appellees sought, among other things, the formula for the steel belt skim stock on the tire in question, identified by appellees as Bridgestone's P175/70R13 FR721 steel-belted radial tire.[1]  Bridgestone objected to these requests and moved for a protective order covering all trade secrets used to produce FR721 tires, including the skim stock formula.

After hearing arguments regarding issuance of a protective order, the trial court directed Bridgestone to disclose the skim stock formula.  The court briefly explained:

> [Bridgestone] has argued that the "skin [sic] stock" information is a confidential
> or secret formula, which [Bridgestone] protects from its competitors.  Plaintiff has

---

[1] A steel-belted radial tire contains one or more calendared layers of steel cord beneath the tire tread to help strengthen the tire structure.  The FR721 tire "typically contains more than twenty (20) components and ten (10) different rubber compounds."  (Pet. Transfer at 1 n.1.)  Skim stock, one of these rubber compounds, "is specially formulated to provide, among other things, adhesion between the rubber and steel cord, and between the belts and surrounding components."  (Id.)

argued that such information is necessary in the effective preparation and presentation of its case. The Court finds that after considering all of the evidence and arguments of counsel, that [Bridgestone] has failed to establish why this information should not be made available as part of the discovery process.

(Appellants' App. at 13-14.) The court restricted the use and dissemination of the skim stock formula to those individuals who are "an employee, litigant, or expert employed by the parties," with any violation subject to "severe punishment for contempt of court." (Id. at 14.)

Bridgestone petitioned for an interlocutory appeal, which was initially denied by the Court of Appeals but then granted after rehearing.[2] Bridgestone argued that the skim stock formula deserved protection as a trade secret and that appellees had not shown that their need for the formula outweighed the harm of disclosure. Appellees contended that the trial court did not abuse its discretion by ordering disclosure. The Court of Appeals affirmed. Bridgestone Americas Holding, Inc. v. Mayberry, 854 N.E.2d 355 (Ind. Ct. App. 2006). We granted transfer.


**Trade Secret Protective Orders under Trial Rule 26(C)**


Our review of discovery matters is limited to determining whether the trial court abused its discretion. Terre Haute Reg'l Hosp., Inc. v. Trueblood, 600 N.E.2d 1358 (Ind. 1992). "An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." McCullough v. Archbold Ladder Co., 605 N.E.2d 175, 180 (Ind. 1993).

The issue in this case centers on the burden each party bears and the analysis the trial court must follow when one party seeks discovery of a trade secret. Bridgestone advocates a multi-part, burden-shifting analysis for applying Trial Rule 26(C), which governs discovery protective orders. (Appellants' Br. at 9-19; Amicus Br. at 10-15.) Using its proposed analysis, Bridgestone argues the appellees have not demonstrated sufficient need for the skim stock

---

[2] Appellees contended on appeal that when the Court of Appeals first denied Bridgestone's interlocutory appeal, jurisdiction automatically returned to the trial court. (Appellees' Br. at 5.) Consequently, appellees argue, the Court of Appeals had no authority to later grant the appeal. (Id.) We summarily affirm the Court of Appeals' treatment of this issue. Ind. Appellate Rule 58(A).

formula to outweigh the harm of disclosure to Bridgestone. (Appellants' Br. at 17-19.) Appellees contend that the trial court's analysis was adequate and that it properly followed the rubric of Rule 26(C). (Appellees' Br. at 15-28.)

We have not before been asked to interpret Rule 26(C)'s instructions about seeking a protective order covering trade secrets and other confidential information, and we do so now to provide guidance on this issue.

## A. The History of Trade Secret Protection

Trade secrets are unique creatures of the law, not property in the ordinary sense, but historically receiving protection as such.[3] Unlike other assets, the value of a trade secret hinges on its secrecy. As more people or organizations learn the secret, the value quickly diminishes. For this reason, owners or inventors go to great lengths to protect their trade secrets from dissemination.

The value of trade secret protection to a healthy economy has been widely accepted for some time. Over the last two hundred years, the law has developed mechanisms for accomplishing this end. The first reported English cases appeared in 1817 and involved the misappropriation of formulae for certain medicines. William B. Barton, A Study in the Law of Trade Secrets, 13 U. Cin. L. Rev. 507, 508 (1939). Trade secret misappropriation cases appeared in the United States in 1837, and the Massachusetts Supreme Judicial Court is credited with first articulating the concept of trade secrets as property in 1868. Id. at 511, 513-14 (citing Peabody v. Norfolk, 98 Mass. 452 (1868)). These judicial mechanisms for protecting trade secrets have developed to serve two policy goals: "[t]he maintenance of standards of commercial ethics and the encouragement of invention." Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 481 (1974).

---

[3] One of the biggest distinctions between a trade secret and ordinary property is the lack of a right to exclude others from a trade secret's use. Thus, trade secrets may be thought of as a weaker form of property. Robert G. Bone, A New Look at Trade Secret Law: Doctrine in Search of Justification, 86 Cal. L. Rev. 241, 254 (1998); Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 489-90 (1974).

This Court has long recognized the importance of protecting trade secrets from inappropriate disclosure. See Keller v. B. F. Goodrich Co., 117 Ind. 556, 19 N.E. 196 (1888) (noting that if a witness' probable answer to a question would disclose a trade secret, the witness may be precluded from answering); Westervelt v. Nat'l Paper & Supply Co., 154 Ind. 673, 57 N.E. 552 (1900) (affirming an injunction for trade secret misappropriation and describing principles of trade secret law). Most trade secret litigation in Indiana has involved allegations of overt misappropriation. See e.g., Infinity Products, Inc. v. Quandt, 810 N.E.2d 1028 (Ind. 2004) (employee required to pay $645,000 in damages for using former employer's confidential pricing information to enable his new employer to undercut former employer's prices); Amoco Production Co. v. Laird, 622 N.E.2d 912 (Ind. 1993) (oil company's competitor enjoined from further oil exploration after using a confidential map of oil reserves sent by oil company's frustrated employee); Kozuch v. CRA-MAR Video Center, Inc., 478 N.E.2d 110 (Ind. Ct. App. 1985) (video center's competitor enjoined from using video center's customer list after competitor acquired computer disks containing list and sent advertisements to video center's customers).

Of course, trade secrets may be valuable during the course of litigation not involving misappropriation claims, and there are moments when justice requires disclosure. Still, courts must proceed with care when supervising the discovery of trade secrets, lest the judiciary be used to achieve misappropriation or mere leverage.

## B. Protecting Trade Secrets from Misappropriation during Discovery

For over a quarter century, federal courts have consistently applied a three-part balancing test when a party seeks an order protecting trade secrets from discovery.[4] See generally 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure §

---

[4] See Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525 (D. Del. 2002); In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991); American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734 (Fed. Cir. 1987); Centurion Indus., Inc. v. Warren Steurer & Assoc., 665 F.2d 323, 325-26 (10th Cir. 1981). The test appears to have developed from the requirement of former Federal Rule of Civil Procedure 30(b) that a party seeking a protective order show "good cause." To satisfy the "good cause" requirement, a party seeking discovery of a trade secret had to show that the trade secret was "relevant and necessary" to the proceedings. Centurion Indus., 665 F.2d at 325 n.4. Former Rule 30(b), governing protective orders, became current Rule 26(c) in 1970.

2043 (2d ed. 1994).  First, the party opposing discovery must show that the information sought is a "trade secret or other confidential research, development, or commercial information" and that disclosure would be harmful.  Fed. R. Civ. P. 26(c)(7).  Then the burden shifts to the party seeking discovery to show that the information is relevant and necessary to bring the matter to trial.  If both parties satisfy their burden, the court must weigh the potential harm of disclosure against the need for the information in reaching a decision.  In re Remington Arms Co., Inc., 952 F.2d 1029 (8th Cir. 1991).

The federal approach is widely deployed among the states, with only slight variation.  See James J. Watson, Annotation, Discovery of Trade Secret in State Court Action, 75 A.L.R.4th 1009, 1027-30 (1990).  For example, a few states require that the party seeking discovery also show that the information sought cannot be obtained elsewhere.  See, e.g., Akst ex rel. Mann v. Cooper Tire Co., 816 N.Y.S.2d 45, 52 (App. Div. 2006).  Even jurisdictions that recognize a privilege for trade secrets have applied a similar balancing test.  See, e.g., In re Cont'l Gen. Tire, Inc., 979 S.W.2d 609 (Tex. 1998); Rare Coin-It, Inc. v. I.J.E., Inc., 625 So.2d 1277 (Fla. 1993); Bridgestone/Firestone, Inc. v. Superior Court, 9 Cal. Rptr. 2d 709 (Ct. App. 1992).  This seems like a suitable basis for analyzing such matters.

## C.  Trade Secrets under Indiana Trial Rule 26(C)

Indiana's trial rules briefly address trade secret protection during discovery.  Rule 26 prescribes what constitutes discoverable material.  The dominant principle, found in subsection B, is that anything relevant and not otherwise privileged is discoverable.  Subsection C then provides the means for seeking protection from the broad reach of the general rule:

> Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> . . .
>
> (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; . . . .

Ind. Trial Rule 26(C). Trial courts ordinarily have great discretion in considering whether "good cause" has been shown and in determining what "justice requires" in a particular case. Indeed, we have never given specific guidance as to what constitutes "good cause."

The application of Rule 26 to trade secrets should be informed by Indiana's enactment of the Uniform Trade Secrets Act (UTSA), which provides states with a common legal framework for protecting trade secrets from misappropriation. All but five states have adopted the UTSA, and Indiana was one of the first. See Ind. Code Ann. ch. 24-2-3 (West 2007); Uniform Law Commissioners, A Few Facts About The Uniform Trade Secrets Act, http://www.nccusl.org/ Update/uniformact_factsheets/uniformacts-fs-utsa.asp (last visited Dec. 14, 2007).

Indiana's adoption of the UTSA evinces our legislature's intent to apply trade secret law uniformly with other jurisdictions. Laird, 622 N.E.2d at 917; see Ind. Code Ann. § 24-2-3-1(b) (West 2007) (stating the purpose of the Indiana UTSA is to make uniform trade secret law among the states). In consideration of this legislative objective, and owing to the substantial number of courts successfully applying it already, we adopt the three-part balancing test as the proper analysis for whether "good cause" has been shown and whether a protective order should be issued for a trade secret during discovery.

*1. Is the Information a Trade Secret?* At the outset, the party seeking a protective order must demonstrate that a trade secret is implicated by a discovery request. The Indiana Trade Secrets Act defines a "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> >
> > (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind. Code Ann. § 24-2-3-2 (West 2007).

Bridgestone argues that the record demonstrates that the skim stock formula is a trade secret. We agree. While the trial court did not make a dispositive finding on this point, it is significant that the trial court issued its order of disclosure subject to severe contempt sanctions. If the court did not believe the skim stock formula to be a trade secret, or at least valuable confidential information, such severe sanctions would not be necessary to protect against disclosure.

Furthermore, the record supports the conclusion that the formula is a trade secret. In an affidavit supporting Bridgestone's motion for a protective order, one Bridgestone engineer explained:

> It frequently takes several years of scientists' and engineers' time and effort to arrive at the detailed formula for a new rubber compound. . . . The steel belt skim stock formula represents one of Bridgestone/Firestone's most valuable assets and most closely guarded secrets, giving Bridgestone/Firestone an important competitive advantage against other tire companies that do not know or use this formula. . . . Access to these recipes is very narrowly limited; within Bridgestone/Firestone, access is restricted to a very small group of people on a "need to know" basis. Other company personnel do not have access to this detailed information, and only know of the rubber compounds by code designations which do not indicate the chemical makeup. At Bridgestone/Firestone's tire manufacturing facilities, the information identifying the formula is also coded so that specific chemicals are not identified. . . . Furthermore, only those plant employees with certain security passwords have access even to the coded information. . . . Bridgestone/Firestone requires each employee to sign a secrecy agreement that expressly recognizes the trade secret nature of [the formulae]. . . . Rubber compound formulas cannot be determined by analyzing the finished, or "cured" tire. Once a tire is cured, the chemical composition changes so that the exact formula cannot be "reverse engineered."

(Appellants' App. at 74-75, 77.)

Appellees did not present any evidence contradicting the engineer's statements in their response to Bridgestone's motion for a protective order. Appellees merely argued, without support, that Bridgestone's evidence does not show that the information sought is legally a trade secret.[5] (Id. at 137-39.) Such a minimal showing hardly calls into question whether Bridgestone

---

[5] For example, appellees appear to have made the incredible argument before the trial court that Bridgestone provided no evidence to support its "one piece of evidence," referring to the engineer's affidavit. (Appellants' App. at 143.) On appeal, appellees contend that Bridgestone has not shown that economic harm would result from the

met its burden. We conclude that the engineer's affidavit adequately demonstrates that the skim stock formula qualifies as a trade secret under Ind. Code § 24-2-3-2 and for the purpose of seeking a protective order under Rule 26(C).

*2. Is the Information Relevant and Necessary to the Discovering Party's Case?* Once the information is established as a trade secret, the burden shifts to the party seeking discovery to show that disclosure is relevant and necessary.

The relevance standard commonly employed on this point is the same general relevance standard found in Ind. Trial Rule 26(B), which mirrors Federal Rule 26(b). See American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 742 (Fed. Cir. 1987) (citing Fed. R. Civ. P. 26(b)(1) in discussing proper relevance standard and indicating that "some relationship" must be shown between the information sought and the claims); Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 107 F.R.D. 288, 293 (D. Del. 1985) ("governing relevance standard . . . is the broad relevance standard applicable to pre-trial discovery"). But see In re Cont'l Gen. Tire, Inc., 979 S.W.2d at 612-13 (requiring only necessity to be shown, not both relevance and necessity). Materials sought in discovery must always be relevant under Rule 26(B), otherwise discovery cannot be had. This part of the balancing test requires relevance to be affirmatively re-established, providing an additional safeguard for the underlying trade secret.[6]

Meanwhile, it is clear from the case law that establishing necessity is the heart of this three-part analysis. When necessity is established, courts frequently hold that the trade secret must be disclosed, albeit with some protection. Coca-Cola, 107 F.R.D. at 293.

___

formula's disclosure since the formula is no longer used. (Appellees' Br. at 19, 22-23.) As Bridgestone's engineer testified in his affidavit, however, the formula retains significant economic value, even in retirement. "The development of tire compound formulas is an evolutionary process, in which a given new formula is painstakingly developed based on what has gone before. Therefore, disclosure of the . . . formula at issue would potentially provide competitors access to the current compounding methods used by Bridgestone/Firestone." (Appellants' App. at 78-79.)

[6] While this might seem like a requirement that the information sought must be "more necessary," we hesitate to sever the relevance showing from an analysis that has been successfully applied by other jurisdictions for some twenty-five years. Relevance and necessity in this context are likely to be especially intertwined. We take the relevance requirement to call for a modest description of what facts the trade secret might prove or disprove.

"Necessity" means that without discovery of the particular trade secret, the discovering party would be unable to present its case "to the point that an unjust result is a real, rather than a merely possible, threat." In re Bridgestone/Firestone, Inc., 106 S.W.3d 730, 733 (Tex. 2003). Implicit in this is the notion that suitable substitutes must be completely lacking. See American Standard, 828 F.2d at 743 ("need is diminished when the information is available elsewhere").

In this case, while appellees successfully demonstrated the general relevance of the skim stock formula, they failed to show that it was necessary to the presentation of their case. Appellees argued to the trial court that the formula is necessary to show changes in the skim stock formula over time and to understand "how the manufacture of the tire by [Bridgestone] contributed to Harmony's death." (Appellants' App. at 42-45, 148-49.) The only evidence of necessity appellees present is a letter from a former Bridgestone engineer submitted for a different case involving the failure of a different tire.[7] (Id. at 167-73.) While one would expect the letter to support the appellees' contentions, the engineer concluded that the tire in question was not defective, and he never indicated that he needed to know the skim stock formula to evaluate the tire for defects.

Even though Bridgestone did not have an evidentiary burden at this step of the analysis, Bridgestone's engineer stated in his affidavit:

> [T]he physical properties of the steel belt skim stock used in the subject tire can be determined by inspection of the tire itself and testing of the belt materials, if necessary. Access to the formula is unnecessary to determine whether the tire was properly designed and manufactured. In fact, compound formulas do not tell you whether a tire containing those compounds will have satisfactory or unsatisfactory physical properties after it is vulcanized. The only way to make that determination is to examine and test the finished tire itself.

(Id. at 78.) The testimony reveals that an inspection of the failed tire appears to be more than an adequate substitute for examining the skim stock formula. Appellees have not shown that they need the formula, and consequently, it should not have been ordered disclosed by the trial court. Remand to the trial court on this point would not improve the state of affairs, since appellees'

---

[7] To say the least, it would have been more helpful to the appellees' case if the engineer had prepared a report for the tire at issue in this case or for the same tire style in a different case.

counsel indicated at oral argument that there was nothing appellees "could do or would need to do" to show their need for the skim stock formula.

*3. Does the Harm of Disclosure Outweigh the Need?* Ordinarily, when both parties satisfy their burdens, the court must then balance the harm from disclosure against the need for the information. This weighing determination involves substantial judicial discretion and careful attention to the facts of the particular case.

Because appellees did not meet their burden for showing necessity, a final balancing of the interests is unnecessary to the outcome of this case. Bridgestone demonstrated that the skim stock formula is a trade secret, but appellees could not demonstrate that they needed the formula in presenting their product liability action. Disclosure was therefore inappropriately ordered.

## Conclusion

We reverse the trial court's protective order directing disclosure of Bridgestone's skim stock formula, and we remand for further proceedings on the merits.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.