**Richard S. BOBROW, Appellant–Respondent,**

**v.**

**Janet L. BOBROW, Petitioner.**

**Ernst & Young, LLP, Appellant,**

**and**

**Cap Gemini Ernst & Young U.S., LLC, Appellant–Intervenor.**

**The Indianapolis Star, Appellee–Intervenor.**

**No. 29A02–0302–CV–108.**

Court of Appeals of Indiana.

June 16, 2004.

[redacted]

Wilson S. Stober, Goodin, Abernathy & Miller LLP, Andrew Z. Soshnick, Baker & Daniels, Indianapolis, IN, Attorneys for Appellant Richard S. Bobrow.

David O. Tittle, Karl L. Mulvaney and Kandi K. Hidde, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant/Intervenor Cap Gemini.

Brian W. Welch, Phillip J. Fowler, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant Ernst & Young.

Michael A. Wilkins, Ice Miller, Indianapolis, IN, Attorney for Appellee/Intervenor The Indianapolis Star.

Kevin W. Betz, Betz & Associates, Indianapolis, IN, Attorney for Amicus Curiae The Hoosier State Press Association Foundation.

## OPINION

VAIDIK, Judge.

### Case Summary

This appeal stems from the high-profile dissolution proceedings involving Janet L. and Richard S. Bobrow. The issues presented on appeal do not involve the terms of the dissolution decree. In fact, the parties' marriage was ultimately dissolved via a private and confidential settlement agreement, which the trial court approved. Instead, this appeal involves parties who intervened in the dissolution proceedings to address the key issue of whether the Indiana Access to Public Records Act, Indiana Code §§ 5-14-3-1 to -10 ("the Public Records Act" or "the Act"), permits a trial court to seal public records—which fall within a mandatory exception to the public access provisions of the Act—after those records are admitted into evidence at trial. Based on the plain and clear meaning of the Public Records Act, we conclude that the Act permits the trial court to seal public records that fall within a mandatory exception to the Act either before or after they are admitted into evidence. We also conclude that this is a right that a party can waive.

### Facts and Procedural History

In March 2000, Janet filed a Petition for Dissolution of Marriage against her then-husband Richard before Judge Nation in the Hamilton Superior Court. At the time, Richard was a partner and the global chief executive officer of Ernst & Young ("E & Y"), which is one of the four largest accounting firms in the world.

As part of the dissolution proceedings, Janet served non-party discovery requests on E & Y seeking a wide range of documents relating to Richard's financial inter-

est in E & Y, the internal governance and financial condition of E & Y, and the sale of E & Y's consulting business to Cap Gemini, a French information technology company. Janet also served non-party discovery requests on Cap Gemini seeking information related to its purchase of E & Y's consulting business.

Because E & Y is a privately-held firm and is not required to disclose its financial information to the public (and in fact does not do so), Janet and Richard stipulated to, and the trial court approved, two Protective Orders that would "protect the confidential status of protected information during discovery," one for E & Y and the other for Cap Gemini. Appellants' App. p. 31, 37. The Protective Orders contained similar language[1] and provided that protected information, as defined therein, "shall be used only for the conduct of this litigation and for no other purpose whatsoever, and shall not be given, shown, made available, or communicated in any way" except to certain designated individuals, such as court personnel, the parties and their attorneys, outside experts, and witnesses or deponents. *Id.* The Protective Orders, which were to continue in effect even after the dissolution proceedings were concluded, also provided that "[p]rovisions for the use of such information at trial similarly shall be made by agreement or by pre-trial order governing the use and protection of the record, consistent with controlling law relating to public access to judicial documents." *Id.* at 33–34, 41. Based on its understanding and assurances from Janet's attorney that the documents Janet requested were covered by the Protective Orders and therefore would not be disclosed to the public either during or after the dissolution proceedings, E & Y and Cap Gemini produced the documents.

The trial court conducted the final hearing in the dissolution proceedings in October 2001. Prior to the hearing, which was open to the public, Janet and Richard stipulated to the admissibility of the documents that were produced by E & Y and designated as confidential pursuant to the Protective Orders. During the hearing, Janet—who had not notified E & Y and Cap Gemini either before or after the hearing—admitted the documents into evidence. Richard neither objected to the admission of the exhibits based on their confidentiality nor moved to seal the exhibits. Additionally, Janet and Richard did not enter into an agreement or seek a pretrial order governing the use of the protected information at trial. Nearly a year later, in September 2002, the trial court entered its Decree of Dissolution.[2] Because of the sensitive financial information revealed in the decree concerning E & Y and Cap Gemini, the Decree of Dissolution generated nationwide publicity. *See* David Cay Johnston, *Ernst Finances are Disclosed in Documents in a Divorce*, N.Y. Times, Oct. 15, 2002, at C1.

In response to numerous requests for the actual trial exhibits, including one by The New York Times ("The Times"), the trial court conducted a conference with the attorneys for Janet and Richard. Neither attorney opposed the release of the exhib-

---

1. There is one notable exception. The Cap Gemini Protective Order additionally provided that five days notice must be given before the protected information could be offered into evidence at trial.

2. Richard subsequently appealed the Decree of Dissolution. During the pendency of the appeal, Richard and Janet entered into a Private and Confidential Settlement Agreement. The trial court approved it and entered an Amended Decree of Dissolution. Accordingly, this Court dismissed Richard's appeal. The trial court subsequently removed portions of the original Decree of Dissolution from its file.

its. Three days after the article was published in The Times, E & Y filed a Motion to Seal Certain Trial Exhibits and Trial Testimony, which it later supplemented, on grounds that eighteen of the exhibits[3] contained trade secrets and confidential financial information, which are specifically excepted from the public access provisions of the Public Records Act. Because some of the eighteen exhibits also contained trade secrets and confidential financial information of Cap Gemini, it later joined this motion. Thereafter, The Times filed a Motion to be Heard Prior to Any Determination to Seal Exhibits and Transcripts.[4]

In November 2002, the trial court conducted a hearing on the Motion to Seal. The Times was present and participated in the hearing. On January 8, 2003, the trial court issued detailed Findings of Fact, Conclusions of Law and Order denying the Motion to Seal. Specifically, the trial court found that the eighteen exhibits contained trade secrets and confidential financial information. Despite its acknowledgement that trade secrets and confidential financial information are excepted from the public access provisions of the Public Records Act, the trial court concluded:

While it is clear that the parties did not comply with the terms of the Protective Orders, there is no statute or case law that permits the Court to seal trade secrets and/or confidential financial information after they have become part of the public record.... Therefore, because [E & Y] and Cap Gemini's trade secrets and confidential financial information were not sealed prior to becoming part of the public record, the confidentiality was lost, and the Court cannot retroactively alter the status of such documents.... While [the eighteen exhibits] qualify as trade secrets and/or confidential [financial] information, at this stage in the proceedings, they cannot be excepted from disclosure under Ind.Code § 5–14–3–4(a)(4)–(5), and [E & Y] and Cap Gemini's MOTIONS TO SEAL should be DENIED.

Appellants' App. p. 101, 102. Shortly thereafter, The Times obtained copies of the exhibits and published an article on January 14, 2003.[5] *See* David Cay Johnston & Jonathan D. Glater, *Ernst & Young Financial Details are Disclosed in Divorce Case*, N.Y. Times, Jan. 14, 2003, at

---

**3.** The following exhibits are at issue: E & Y 1999 Annual Report to U.S. Partners; September 30, 1999, Partnership Agreement of E & Y; Valuation of the Consulting Business and Certain Assets as of May 23, 2000; September 30, 1997, 1998 and 1999 Combined Financial Statements for E & Y Consulting; Master Agreement By and Among Cap Gemini and E & Y and Each Accredited Partner of E & Y, U.S. LLP, etc. dated February 28, 2000; Schedule 7.7(f) to Master Agreement; March 1, 2000, Capital Partner Information Document on the Proposed Cap Gemini Transaction; Annual Report to U.S. Partners of E & Y for fiscal year 2000; Annual Report to U.S. Partners of E & Y; E & Y Partnership Agreement dated September 30, 2000; E & Y Partnership Equity Analysis as of 3/31/00; Project Vision—Presentation to the Fairness Committee dated February 27, 2000; E & Y Valuation Work Papers; Materials Support-

ing E & Y's Valuation; Transcript of Deposition of Richard N. Lemieux (4/24/01); Transcript of Deposition of Richard N. Lemieux (10/17/01); Transcript of Deposition of William Keith Rollins (4/25/01); and Transcript of Deposition of Donald L. Charles (8/24/01).

**4.** It appears that this is not the usual way for a person to challenge a public agency's denial of the right to inspect a public record. Rather, Indiana Code § 5–14–3–9(e) provides:

A person who has been denied the right to inspect or copy a public record by a public agency may file an action in the circuit or superior court of the county in which the denial occurred to compel the public agency to permit the person to inspect and copy the public record.

**5.** After The Times obtained the exhibits, it withdrew from the case.

C1. A stay on the Order denying the Motion to Seal was obtained before the public or other members of the media were able to obtain the exhibits.

While the Motion to Seal was still under consideration, Richard filed a Motion to Remove and Expunge from Record All Exhibits; Trial Transcripts; and Findings of Fact, Conclusions of Law, Decree of Dissolution, and Judgment Entry ("Motion to Remove"). Specifically, Richard sought to have removed from the record "all exhibits, the trial transcript, and the remaining portions of the September 20, 2002, Findings of Fact, Conclusions of Law, Decree of Dissolution, and Judgment Entry." Appellants' App. p. 83. E & Y and Cap Gemini subsequently joined the Motion to Remove. The Indianapolis Star ("The Star") intervened and opposed the Motion to Remove. Following a hearing, the trial court issued an Order denying the Motion to Remove in April 2003 on grounds that it "could not find, and the parties did not present, any Indiana statute or case law that permits under the facts of this case the Court to expunge the public record." Appellants' App. p. 193B. The trial court also found that Richard voluntarily waived his right to keep the confidential information from being disclosed to the public because he introduced such items in an open court proceeding. The Order denying the Motion to Remove was also stayed.

Cap Gemini, which intervened for purposes of appeal, and E & Y appeal the denial of the Motion to Seal, and Richard appeals the denial of the Motion to Remove. The Hoosier State Press Association, which is an association of 170 Indiana newspapers, appears as Amicus Curiae on behalf of The Star.

### Discussion and Decision

We first observe that E & Y and Cap Gemini had standing to ask the trial court to seal the records. Standing was established because the records, which contained trade secrets and confidential financial information regarding E & Y and Cap Gemini, were released in the public domain in violation of the Protective Orders that were designed to protect them and through no fault of their own.[6] Having established standing, we now set forth the issues on appeal. E & Y and Cap Gemini contend that the trial court erred by denying the Motion to Seal, and Richard contends that the trial court erred by denying the Motion to Remove. Specifically, E & Y and Cap Gemini argue that the Public Records Act permits the trial court to seal the eighteen exhibits after they were admitted into evidence because they fall within a mandatory exception to the public access provisions of the Act. Similarly, Richard argues that the Public Records Act permits the trial court to seal all exhibits, the trial transcript, and the remaining portions of the September 2002

---

6. Likewise, we find that E & Y and Cap Gemini have standing to pursue this appeal. In May 2003, this Court ordered E & Y and Cap Gemini "to include as a part of its opening brief of the Appellant in this appeal, a showing of its standing to request relief in this appeal." *Bobrow v. Bobrow*, No. 29A02–0302–CV–108 (Ind.Ct.App. May 5, 2003) (unpublished order). Consequently, Cap Gemini argues that it has standing because it intervened in the dissolution proceedings. *See Panos v. Perchez*, 546 N.E.2d 1253, 1254 (Ind.Ct. App.1989) ("An intervenor is treated as if he

were an original party and has equal standing with the original parties."). E & Y, which did not intervene, argues that it has standing because it obtained a protective order and suffered a demonstrable injury when confidential information was released in violation of that order. *See Edwards v. Ind. State Teacher's Ass'n*, 749 N.E.2d 1220, 1224 (Ind.Ct.App. 2001) ("Standing limits a court's jurisdiction by compelling the judiciary to resolve real controversies in which the complaining party has a demonstrable injury.").

Decree of Dissolution. Conversely, The Star contends that the Public Records Act does not permit the trial court to seal any of the records because they were admitted into evidence in open court while Richard, E & Y, and Cap Gemini stood silently by. Thus, we are called upon to interpret the Public Records Act.[7]

Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *In re K.J.A.,* 790 N.E.2d 155, 158 (Ind.Ct.App.2003). The cardinal rule of statutory construction is that if a statute is unambiguous, then we need not and cannot interpret it; rather, we must apply its plain and clear meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002); *Coplen v. Omni Rests., Inc.,* 636 N.E.2d 1285, 1287 (Ind.Ct.App.1994).

The first section of the Public Records Act sets forth the public policy underlying the Act:

A fundamental philosophy of the American constitutional form of representative government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. Providing persons with the information is an essential function of a representative government and an integral part of the routine duties of public officials and employees, whose duty it is to provide the information. This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record.

Ind.Code § 5–14–3–1. Section 3 of the Public Records Act provides, "Any person may inspect and copy the public records [8] of any public agency [9] during the regular business hours of the agency, except as provided in section 4 of this chapter." Ind.Code § 5–14–3–3(a). Section 4, in turn, sets forth numerous exceptions to the disclosure requirement of section 3. *Unincorporated Operating Div. of Ind. News-*

---

**7.** In addition to the Public Records Act, The Star relies heavily on constitutional and common law from Indiana and other jurisdictions in support of its argument regarding the right of the public to obtain access to public records versus the denial of that access to serve overriding public or private interests. Because the Indiana General Assembly codified these competing interests in 1983 with its enactment of the Public Records Act, we conclude that the Act alone governs this case. This conclusion is further bolstered by The Star's failure to challenge the constitutionality of the Public Records Act.

**8.** "Public record" is defined as:
any writing, paper, report, study, map, photograph, book, card, tape recording, or other material that is created, received, retained, maintained, used or filed by or with a public agency and which is generated on paper, paper substitutes, photographic media, chemically based media, magnetic or machine readable media, electronically stored data, or any other material, regardless of form or characteristics.
Ind.Code § 5–14–3–2. This statute included "used" at the time of this litigation, but it was amended in 2003 to delete that word. P.L. 261–2003 (effective May 8, 2003).

**9.** "Public agency" includes "[a]ny board, commission, department, division, bureau, committee, agency, office, instrumentality, or authority, by whatever name designated, exercising any part of the executive, administrative, judicial, or legislative power of the state." I.C. § 5–14–3–2. No party contests that a trial court qualifies as a public agency. *See Woolley v. Washington Township of Marion County Small Claims Court,* 804 N.E.2d 761, 765 (Ind.Ct.App.2004) (holding that a small claims court is a public agency because it exercises the judicial power of the State).

*papers, Inc. v. Trs. of Ind. Univ.*, 787 N.E.2d 893, 901 (Ind.Ct.App.2003), *trans. denied.* Specifically, section 4(a) sets forth mandatory exceptions to public access, and section 4(b) sets forth exceptions that may be invoked at the discretion of the public agency. Ind.Code § 5–14–3–4(a), (b). Under section 4(a), trade secrets[10] and confidential financial information are mandatory exceptions. Public records containing mandatory exceptions, such as trade secrets and confidential financial information, "may not be disclosed by a public agency, unless access to the records is specifically required by a state or federal statute or is ordered by a Court under the rules of discovery." I.C. § 5–14–3–4(a)(4), (5).

Section 5.5, which applies only to judicial public records, governs the sealing of public records. Specifically, section 5.5 provides that before a court may seal a public record that is not declared confidential under section 4(a), it must hold a hearing. Ind.Code § 5–14–3–5.5(a), (c). At the hearing, the parties or members of the general public must be permitted to testify and submit written briefs. I.C. § 5–14–3–5.5(d). Furthermore,

> A decision to seal all or part of a public record must be based on findings of fact and conclusions of law, showing that the remedial benefits to be gained by effectuating the public policy of the state declared in section 1 of this chapter are outweighed by proof by a preponderance of the evidence by the person seeking the sealing of the record that:
>
> (1) a public interest will be secured by sealing the record;

(2) dissemination of the information contained in the record will create a serious and imminent danger to that public interest;

(3) any prejudicial effect created by dissemination of the information cannot be avoided by any reasonable method other than sealing the record;

(4) there is a substantial probability that sealing the record will be effective in protecting the public interest against the perceived danger; and

(5) it is reasonably necessary for the record to remain sealed for a period of time.

Sealed records shall be unsealed at the earliest possible time after the circumstances necessitating the sealing of the records no longer exist.

*Id.* We now address the parties' arguments.

## I. E & Y and Cap Gemini: Motion to Seal

E & Y and Cap Gemini contend that the trial court erred by denying the Motion to Seal. Specifically, they argue that the Public Records Act permits the trial court to seal the eighteen exhibits—after they were admitted into evidence—because they contain trade secrets and confidential financial information, which are mandatory exceptions under section 4(a). On the other hand, The Star, which does not dispute that the exhibits fall within the trade secret and confidential financial information exceptions to the Public Records Act, contends that although the trial court could have sealed the exhibits before they were

---

**10.** Indiana Code § 5–14–3–2 provides that for purposes of the Public Records Act, the term "trade secret" has the same meaning set forth in Indiana Code § 24–2–3–2, which defines "trade secret" to include "information ... [that] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from its disclosure or use ... [and] is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

admitted into evidence at trial, "[t]here is nothing in [the Public Records Act] that allows documents to be sealed ... after they have been admitted into evidence in open court."[11] Appellee's Br. p. 5. Thus, the issue is whether the Public Records Act permits the trial court to seal records—which fall within a mandatory exception to the public access provisions of the Act—after they have been admitted into evidence.

We must first determine whether the trial court can seal records that fall within a mandatory exception to the public access provisions of the Act. Section 5.5 provides that before a court may seal a public record that is not declared confidential under section 4(a), it must hold a hearing at which it receives testimony from parties or members of the general public and written briefs. I.C. § 5–14–3–5.5(c), (d). The court can seal the public records after it issues findings of fact and conclusions of law that balance the competing interests of open access to public records and the public's interest in having the public records sealed. I.C. § 5–14–3–5.5(d). In contrast, when public records fall within a mandatory exception under section 4(a), the trial court can seal those records without holding such a hearing and balancing the competing interests. Treating such records differently makes sense because the exceptions set forth in section 4(a) are mandatory; therefore, a balancing of competing

interests is unnecessary. We therefore conclude that the plain language of section 5.5 permits a trial court to seal public records that fall within a mandatory exception under section 4(a) without conducting such a hearing and balancing the competing interests. But we must still determine when such records can be sealed.

E & Y and Cap Gemini assert that the records can be sealed either before or after they are admitted into evidence, and The Star asserts that the records must be sealed before they are admitted into evidence. To resolve this dispute, we turn to sections 3 and 5.5. Both section 3 and section 5.5 speak in terms of "public record," not "record." See I.C. § 5–14–3–3(a) ("Any person may inspect and copy the *public records* of any public agency ....") (emphasis added); I.C. § 5–14–3–5.5(c) ("Before a court may seal a *public record* ....") (emphasis added). The phrase "public record" presumes—in the judicial context—that the record was already admitted into evidence without being sealed, thus becoming part of the public record. By choosing to use "public record" instead of "record," the legislature intended that a motion to seal could be made either before or after the record was admitted into evidence. We therefore conclude that the plain language of the Public Records Act, specifically sections 3 and 5.5, permits public records to be sealed either before or after they are admitted into evidence.[12]

---

11. Because the trial court found, and no parties dispute, that the exhibits fall within the trade secret and confidential financial information exceptions to the Public Records Act, we assume on appeal that the exhibits qualify under these exceptions.

12. This conclusion is bolstered by the Indiana Supreme Court's recent revisions to the Administrative Rules. Beginning January 1, 2005, Administrative Rule 9(H), entitled Prohibiting Public Access to Information In Court Records, will provide:

(1) A verified written request to prohibit public access to information in a court record, may be made by any person affected by the release of the information. The request shall demonstrate that:
(a) The public interest will be substantially served by prohibiting access;
(b) Access or dissemination of the information will create a significant risk of substantial harm to the requestor, other persons or the general public;

Although we conclude that the Public Records Act permits public records to be sealed either before or after they are admitted into evidence, we note that the better course of action is for interested third persons, such as E & Y and Cap Gemini, to request that the records be sealed beforehand. As is obvious in this case, to wait until after the records are admitted into evidence risks the disclosure of records that a court might later determine to be worthy of sealing.

■ Turning now to the eighteen exhibits at issue in the present case, the trial court found that they contained trade secrets and confidential financial information, which are mandatory exceptions under section 4(a). Based on this unchallenged finding and our determination that the Public Records Act permits a person to seek a motion to seal either before or after the records are admitted into evidence, we conclude that the trial court should have granted E & Y and Cap Gemini's Motion to Seal the eighteen exhibits. We therefore reverse the trial court's denial of the Motion to Seal.[13]

Additionally, E & Y and Cap Gemini, by virtue of joining Richard's Motion to Remove in the trial court, seek to have the portions of the transcript that refer to the trade secrets and confidential financial information sealed as well. Accordingly, we remand this case to the trial court with instructions to separate the disclosable and nondisclosable material contained in the transcript. *See* Ind.Code § 5–14–3–6(a) ("If a public record contains disclosable and nondisclosable information, the public agency shall, upon receipt of a request under this chapter, separate the material that may be disclosed and make it available for inspection and copying.").

## II. Richard: Motion to Remove

■ Richard contends that the trial court erred by denying the Motion to Remove.[14] The Motion to Remove sought to remove from the record all exhibits, the trial transcript, and the "entirety of the Court's Findings of Fact, Conclusions of Law, Decree of Dissolution, and Judgment Entry of September 20, 2002, that has not previously been removed and expunged from the record." Appellants' App. p. 84. Although we concluded above that the Public Records Act permits public records

(c) A substantial prejudicial effect to ongoing proceedings cannot be avoided without prohibiting public access, or;
(d) The information should have been excluded from public access under section (G) of this rule.

The Commentary to Rule 9(H) provides that this section "is intended to address those extraordinary circumstances in which information that is otherwise publicly accessible is to be excluded from public access." The Commentary to that rule also provides, "Parties should be aware that their request is not retroactive. Copies of the public record may have been disseminated prior to any request, and corrective action taken under the provisions of this rule will not affect those records." Under the revised rule, any person affected by the release of information in a court record may seek to have access to that

information prohibited *after* it becomes part of the court record.

13. We reject the Star's argument that E & Y and Cap Gemini waived their right to have the exhibits sealed because Richard, who was a partner and chief executive officer of E & Y at the time, did not object when the exhibits were admitted into evidence at the hearing. At the hearing, Richard was acting in his capacity as a husband in the course of dissolution proceedings and not as an agent of E & Y.

14. Although the title of the motion is Motion to Remove and Expunge from Record All Exhibits; Trial Transcripts; and Findings of Fact, Conclusions of Law, Decree of Dissolution, and Judgment Entry, Richard was essentially asking the trial court to seal those records. We therefore treat his motion as such.

to be sealed either before or after they are admitted into evidence, we also conclude that this is a right that can be waived. *See Ind. Newspapers,* 787 N.E.2d at 918 (holding that although the Public Records Act does not contain a waiver provision, the common law doctrine of waiver—which is the voluntary and intentional relinquishment of a known right—nevertheless applies to the Act); *see also Francies v. Francies,* 759 N.E.2d 1106, 1113 (Ind.Ct. App.2001) ("Failure to object at trial results in waiver of the issue upon appeal[.]"), *reh'g denied, trans. denied.*

Here, Richard was in a far different position than E & Y and Cap Gemini because he was a party to the dissolution proceedings, was present during the hearing, and had an obligation to object to the admission of the exhibits. He did not do so. Consequently, Richard has waived his right to seal the exhibits, the trial transcript, and the remaining portions of the September 2002 Decree of Dissolution. Richard stipulated to the admissibility of the exhibits and then stood silently by during the dissolution proceedings as the exhibits, which formed the basis of the decree of dissolution, were admitted into evidence and as the trial transcript was being made. We therefore affirm the trial court's order that Richard voluntarily waived his right to keep the confidential information from being disclosed to the public.

### III. The Star: Waiver

■ We lastly address The Star's argument that because the trial court "allowed access to one media outlet [The Times], the court could not deny access to other members of the media or the public." Appellee's Br. p. 6. In support of this argument, The Star cites *Unincorporated Operating Division of Indiana Newspapers, Inc. v. Trustees of Indiana University.* In that case, this Court addressed The Indi-napolis Star's argument that the trustees of Indiana University waived an exception to the public access provisions of the Public Records Act by releasing some of the information to the public. This Court observed that even though the Public Records Act does not contain a waiver provision, a public agency can nevertheless waive an exception to public access. *Ind. Newspapers,* 787 N.E.2d at 918–19. Specifically, this Court

> envision[ed] a situation in which a state agency might relinquish the protections afforded by [the Public Record Act's] exceptions. If, for example, an agency allowed one party access to materials and then in turn denied another party access to the same materials based upon an exception to [the Act], the agency might well be held to have waived the applicable [Public Record Act's] protections.

*Id.* at 919. However, that is not the situation presented here. The trial court did not allow one party access and then deny access to another party. Rather, the trial court allowed The Times to view the exhibits after denying the Motion to Seal but before granting a stay. Presumably, if we affirmed the trial court's order denying the Motion to Seal, then the trial court would permit access to other parties. Therefore, the trial court did not do anything to relinquish the protections afforded by the Public Record Act's exceptions, and The Star's argument fails.

### Conclusion

The Public Records Act permits the trial court to seal public records that fall within a mandatory exception to the Act either before or after they are admitted into evidence. Accordingly, the trial court erred by denying E & Y and Cap Gemini's Motion to Seal the eighteen exhibits. Although interested third persons may re-

quest that records be sealed after they are admitted into evidence, this is a right that can be waived. Richard has waived his right to seal the various records because he stood silently by as the records were admitted into evidence and as the trial transcript was being made.

Affirmed in part, reversed in part, and remanded.

SHARPNACK, J., concurs.

MATHIAS, J., concurs with separate opinion.

MATHIAS, Judge concurring.

I am pleased to fully concur in Judge Vaidik's well-reasoned opinion.

I write only to express my concern that every day, there is much "confidential financial information" contained within documents routinely filed and submitted in evidence in judicial proceedings (dissolution and otherwise) throughout Indiana, without any claim of privacy under IC 5–14–3. Until now, attorneys and their clients have correctly assumed that civil society would accord them the privacy customarily due such proceedings. It troubles me to add yet another pleading, a motion to seal, to the time and expense of obtaining a very common legal resolution, a dissolution of one's marriage, in Indiana. I am most displeased with this result and its effect upon parties, their attorneys, and courts, but I see no alternative.