ORBITZ, LLC, Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–0903–TA–10.

Tax Court of Indiana.

Oct. 16, 2013.

Larry J. Stroble, Randal J. Kaltenmark, Howard E. Kochell, Ziaaddin Mollabashy, Barnes & Thornburg LLP, Indianapolis, IN, Catherine A. Battin, Elizabeth B. Herrington, Aron Frakes, Megan Thibert–Ind, Jeffrey A. Rossman, McDermott Will & Emery LLP, Chicago, IL, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Jessica E. Reagan, Thomas D. Cameron, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

ORDER ON PETITIONER'S VERIFIED REQUEST TO PROHIBIT PUBLIC ACCESS TO INFORMATION IN THE COURT RECORD

WENTWORTH, J.

This matter comes before the Court on Orbitz, LLC's request to have certain doc-

uments within the judicial record placed under seal so they cannot be accessed by the general public. Being duly advised in the matter, the Court grants Orbitz's request.

## BACKGROUND

Orbitz, a Delaware corporation with its principal place of business in Chicago, Illinois, is an online travel company. Through its website, www.orbitz.com, Orbitz "provides travel related services enabling [its customers] to search for and make reservations for a broad array of travel products, including airline tickets, lodging, rental cars, cruises and vacation packages[.]" (Jt. Stip. Facts, Aug. 28, 2013 ("Jt. Stip."), ¶ 1.) Between January 1, 2004 and December 31, 2006, Orbitz's customers booked hotel rooms in Indiana through Orbitz's website ("bookings at issue").

In 2007, the Indiana Department of State Revenue completed an audit of Orbitz. As a result of the audit, the Department determined that Orbitz had been deficient in remitting Indiana's gross retail (sales) and county innkeeper taxes on the bookings at issue.[1] Consequently, the Department issued proposed assessments against Orbitz. (*See* Jt. Stip., ¶¶ 15–24.)

On June 19, 2008, Orbitz protested the proposed assessments. After holding an administrative hearing, the Department, in two Letters of Findings dated November 24, 2008, denied Orbitz's protest. Orbitz initiated this original tax appeal on March 3, 2009.

On August 2, 2013, Orbitz filed a motion for summary judgment and designated evidence in support thereof. That same day, Orbitz also sought an order from the Court prohibiting public access to information in the Court's Record ("Request"). In the Request, Orbitz explained that its designated evidence included copies of contracts it had with three Indiana hotels. (*See* Pet'r V. Req. Order Prohibiting Pub. Access Info. Ct. R., Aug. 2, 2013 ("Pet'r Req."), ¶ 4 (referring to Pet'r Des'g Evid. Supp. Mot. Summ. J., Ex. 10, Attachs. D–F, Aug. 2, 2013).) *See also supra*, note 1. Asserting that these contracts were "proprietary, competitively sensitive, and contain [Orbitz] trade secrets and financial information," Orbitz's Request asked the Court

> pursuant to IND.CODE § 5–14–3–5.5(c) and Admin. Rule 9(H), [to] hold a public hearing at which time [it] declare the [contracts] to be "confidential information" under IND.CODE § 5–14–3–4(a), by entering a protective order with respect to such confidential information, and an order that the record of proceedings in

1. Generally speaking, a hotel will contract with Orbitz to make its rooms available for reservation through Orbitz's website. Pursuant to the contract, the hotel agrees to accept a certain amount for its rooms ("net rate"). (Jt. Stip. Facts, Aug. 28, 2013 ("Jt. Stip."), ¶ 43.) Nevertheless, a customer who books a room through the website sees—and ultimately pays—a different amount, as Orbitz has added a facilitation fee, a service charge, and a tax recovery charge to the net rate. (*See* Jt. Stip., ¶ 44.) The tax recovery charge is equal to the amount of state and local taxes due on the room's rental at the net rate. (*See* Jt. Stip., ¶ 56.)

After the customer has occupied the room, Orbitz forwards to the hotel the portion of the payment it collected from the customer that constitutes the room's net rate and tax recovery charge. (Jt. Stip., ¶¶ 53, 56, 58, 62–63.) The hotel is then responsible for remitting to the taxing authorities the appropriate state and local taxes due on the room's rental. (Jt. Stip., ¶ 64.) Here, as a result of its audit, the Department determined that taxes should have been calculated and remitted based on the total amount Orbitz's customers paid for the hotel rooms, not merely on the rooms' net rates.

this matter be sealed with respect to such confidential information.

(Pet'r Req., ¶¶ 5, 8.)

The Court conducted a hearing on Orbitz's Request on September 17, 2013. During the hearing, the public was given the opportunity to comment on whether the contracts should be shielded from public access. Additional facts will be supplied when necessary.

## LAW

■ The general rule in Indiana is that information submitted to state governmental entities, including the courts, is accessible by the public. *Travelers Cas. & Sur. Co. v. U.S. Filter Corp.*, 895 N.E.2d 114, 115 (Ind.2008). To promote such accessibility, the Indiana General Assembly has enacted the Access to Public Records Act (APRA), Indiana Code § 5–14–3–1 *et seq.*, which guarantees that "all persons are entitled to full and complete information regarding the affairs of [their] government." IND.CODE § 5–14–3–1 (2013). Likewise, the Indiana Supreme Court has adopted Indiana Administrative Rule 9 to secure the public's access to court records.[2] *See* Ind. Administrative Rule 9(A) (footnote added).

Nonetheless, there are " 'public policy interests that are not always fully compatible with unrestricted access.' " *Travelers*, 895 N.E.2d at 115. Indeed, "unrestricted access to certain information ... could result in an unwarranted invasion of personal privacy or unduly increase the risk of injury to individuals and businesses." Admin. R. 9(A) (Commentary). Accordingly,

both APRA and Administrative Rule 9 set forth certain exceptions to the general rule of public access, trade secrets being one of them. *See* IND.CODE § 5–14–3–4(a)(4) (2013 (version c, eff. 7–1–2013)); Admin. R. 9(G)(1)(b); *Bobrow v. Bobrow*, 810 N.E.2d 726, 732–33 (Ind.Ct.App.2004) (explaining that such exceptions are mandatory).

A trade secret is

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

IND.CODE § 24–2–3–2 (2013). *See also* IND. CODE § 5–14–3–2(q) (2013) (stating that for purposes of APRA, the term " '[t]rade secret' has the meaning set forth in IC 24–2–3–2"); Admin. R. 9(A)(1) (explaining that unless otherwise provided, access to court records under Administrative Rule 9 is governed by the provisions of APRA). Based on this statutory definition, Indiana courts have long held that a trade secret has four general characteristics: 1) it is information; 2) that derives independent economic value; 3) that is not generally known, or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use; and 4) that is the subject of efforts, reasonable

---

**2.** A court record "means both case records and administrative records." Ind. Administrative Rule 9(C)(1). A case record is "any document, information, data, or other item created, collected, received, or maintained by a court ... in connection with a particular case." Admin. R. 9(C)(2). An administrative record is "any document, information, data, or other item created, collected, received, or maintained by a court ... pertaining to the administration of the judicial branch of government and not associated with any particular case." Admin. R. 9(C)(3).

under the circumstances, to maintain its secrecy. *See, e.g., Ackerman v. Kimball Int'l, Inc.*, 634 N.E.2d 778, 783 (Ind.Ct. App.1994), *vacated in part, adopted in part*, 652 N.E.2d 507 (Ind.1995).

## ANALYSIS

 There are certain procedures a court must follow before granting a request to shield information from public access under either Indiana Code § 5–14–3–5.5 or Administrative Rule 9. Most notable among these are the court's duty 1) to conduct a public hearing on the request and 2) to subsequently issue an order that specifically outlines why the need for privacy outweighs the strong public policy that would otherwise allow access to such records.[3] *See* IND.CODE § 5–14–3–5.5(c),(d) (2013); Admin. R. 9(H)(1)-(3) (footnote added). When, however, the documents sought to be protected fall within the mandatory exceptions set forth in APRA or Administrative Rule 9, a court can seal those records without holding such a hearing and balancing the competing interests.

*See Bobrow*, 810 N.E.2d at 734; Admin. R. 9(G)(1), (H), (I). Consequently, the Court's primary task is to determine whether Orbitz's contracts are, or contain, "trade secrets."

First, the contracts at issue contain, and therefore are, "information." As previously explained, the contracts specifically detail what Orbitz has negotiated with the hotels regarding room rates (*i.e.*, the net rates). *See supra*, note 1.

Second, Orbitz derives independent economic value from this pricing information. Indeed, given the highly competitive nature of the online travel industry, if Orbitz's competitors had access to that pricing information, they could possibly gain a competitive advantage by negotiating better rates with hotels.

 Third, the pricing information contained in the contracts is not readily ascertainable through proper means by others who can obtain economic value from the information's disclosure or use.[4] While it

3. With respect to the latter duty, Indiana Code § 5–14–3–5.5(d) requires that the court's order be based on findings of fact and conclusions of law and show

> that the remedial benefits to be gained by effectuating the [state's] public policy of [public access] are outweighed by proof by a preponderance of the evidence by the person seeking the sealing of the record that:
> (1) a public interest will be secured by sealing the record;
> (2) dissemination of the information contained in the record will create a serious and imminent danger to that public interest;
> (3) any prejudicial effect created by dissemination of the information cannot. be avoided by any reasonable method other than sealing the record;
> (4) there is a substantial probability that sealing the record will be effective in protecting the public interest against the perceived danger; and

> (5) it is reasonably necessary for the record to remain sealed for a period of time.
IND.CODE § 5–14–3–5.5(d) (2013). Administrative Rule 9 requires that a court's order prohibiting public access to information in its records must find that at least one of the following factors has been met:
> (a) The public interest will be substantially served by prohibiting access;
> (b) Access or dissemination of the information will create a significant risk of substantial harm to the requestor, other persons or the general public;
> (c) A substantial prejudicial effect to ongoing proceedings cannot be avoided without prohibiting public access, or;
> (d) The information should have [already] been excluded from public access under section (G) of this rule.
*See* Admin. R. 9(H)(1)-(3).

4. Indiana's Supreme Court has held that "where the duplication or acquisition of alleged trade secret information requires a substantial investment of time, expense, or effort, such information may be found 'not being

cannot be denied that certain information relating to Orbitz's contracts is already in the public domain (*e.g.*, what hotels Orbitz negotiates with), neither Orbitz's competitors nor the general public (*i.e.*, Orbitz customers) could readily ascertain the information regarding hotel room "net rates" that is contained in the contracts.[5]

Finally, Orbitz has taken reasonable efforts to maintain the secrecy of the information contained within the contracts. Each contract contains its own confidentiality clause that precludes the hotels from disclosing to *any* third party any information relating to the contracts as well as any information provided by one party to the other in performing the contract. (*See* Pet'r Des'g Evid. Supp. Mot. Summ. J., Ex. 10, Attachs. D–F, Aug. 2, 2013.)

Because the Court has determined that Orbitz's contracts have the four character-

istics of trade secrets, they fall within the mandatory exceptions to the general rule of public access set forth in APRA and Administrative Rule 9. Accordingly, the Court need not determine whether Orbitz's need for privacy outweighs the policy of providing public access.[6] *See supra*, p. 6 (footnote added).

## CONCLUSION

Competition is the bedrock of our country's economic system. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 332 (2002 ed.) (defining capitalism). The protection afforded to trade secrets under APRA and Administrative Rule 9 helps to foster a healthy, competitive marketplace. *See Bridgestone Americas Holding, Inc. v. Mayberry*, 878 N.E.2d 189, 192 (Ind.2007) (stating that "[u]nlike other assets, the value of a trade secret hinges on its secrecy. As more people or organizations learn

---

readily ascertainable' so as to qualify for protection" under Indiana Code § 24-2-3 (Indiana's Uniform Trade Secrets Act). *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 919 (Ind.1993).

5. "[A] trade secret often may include elements which by themselves may be readily ascertainable in the public domain, but when viewed together may still qualify for trade secret protection." *Id.* If an Orbitz competitor were privy to the net rate information stated in the contracts, it could theoretically calculate the amount of Orbitz's "mark-up" on the rooms by comparing the contract information with the hotel information Orbitz provides online.

6. During the hearing, two members of the public provided comments on whether Orbitz's contracts should be protected from public access. First, an attorney for the Hendricks County Tourism Commission stated that because he believed the case is one of increasing public interest, he appreciated the Court's efforts to determine whether the contracts contained trade secret information. (*See* Hr'g Tr. at 32–35.) Next, the president and chief executive officer of the South Shore Conven-

tion & Visitor's Authority commented that the public's interest in access to the information outweighed Orbitz's desire for confidentiality as the information was neither proprietary nor competitively sensitive. (*See* Hr'g Tr. at 28–29 (asserting that the information was not a trade secret because it was not based on "rocket science," but merely followed the common business model used throughout the online travel industry).) Moreover, he claimed that Orbitz's true reason for requesting confidentiality was to prevent "us Hoosiers who ... [are] not receiving the [benefit of the] taxes that [Orbitz] refuse[s] to remit ... [from] understand[ing] how badly we've been injured." (Hr'g Tr. at 30.)

While it may be true that the online travel industry uses the same business model in negotiating contracts with hotels, Orbitz points out that the business model "says nothing about ... how the pricing for Expedia differs from the pricing [for] Orbitz or Priceline" under that business model. (Hr'g Tr. at 37–39.) Those pricing differences, no matter how minute, may be the difference between players in a highly competitive industry. Furthermore, the contracts do not reveal how much tax, *if any*, Orbitz might owe.

the secret, [its] value quickly diminishes"). Here, Orbitz's contracts contain trade secrets and therefore are protected from public disclosure under both APRA and Administrative Rule 9.

SO ORDERED.