ATTORNEYS FOR PETITIONER:
**RANDAL J. KALTENMARK**
**ZIAADDIN MOLLABASHY**
BARNES & THORNBURG LLP
Indianapolis, IN

**MICHAEL H. SALAMA**
THE WALT DISNEY COMPANY
Burbank, CA

**JEFFREY M. VESELY**
**ANNIE H. HUANG**
PILLSBURY WINTHROP SHAW
PITTMAN LLP
San Francisco, CA

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**EVAN W. BARTEL**
**JESSICA E. REAGAN**
**ANDREW T. GREIN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN



FILED

Apr 09 2015, 1:52 pm

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| ESPN PRODUCTIONS, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 49T10-1312-TA-76 |
| | ) |
| INDIANA DEPARTMENT OF | ) |
| STATE REVENUE, | ) |
| | ) |
| Respondent. | ) |

## ORDER ON PETITIONER'S AMENDED VERIFIED REQUEST TO PROHIBIT PUBLIC ACCESS TO INFORMATION IN THE COURT RECORD

**FOR PUBLICATION**
**April 9, 2015**

WENTWORTH, J.

ESPN Productions, Inc. has requested the Court to place certain documents within the judicial record under seal so they cannot be accessed by the general public. Being duly advised in the matter, the Court grants that request in part and denies it in part.

## BACKGROUND

ESPN Productions is a Delaware corporation with its principal place of business in Bristol, Connecticut. (Pet'r Br. Supp. Mot. Summ. J. ("Pet'r Br.") at 1, 5.) It performs production services for its parent company, ESPN, Inc. ("ESPN"), and several of ESPN's wholly-owned subsidiaries.[1] (Pet'r Br. at 1.) ESPN Productions charges ESPN a production service fee for these services. (Pet'r Br. at 8.)

For the tax years ending September 29, 2007, September 27, 2008, October 3, 2009, and October 2, 2010 (the years at issue), ESPN Productions filed Indiana corporate income tax returns, reporting and paying tax on income it received in connection with its in-state activities. (Pet'r Br. at 5-6.) On June 25, 2012, however, the Department issued Notices of Proposed Assessment, claiming that ESPN Productions owed additional tax for the years at issue. (See Pet'r Br. at 9.) ESPN Productions subsequently protested the proposed assessments. After holding an administrative hearing, the Department issued a Letter of Findings on October 21, 2013, denying the protest. ESPN Productions initiated an original tax appeal on December 19, 2013.

On January 23, 2015, ESPN Productions filed a motion for summary judgment and designated evidence in support thereof. That same day, it also sought a court order

---

[1] "ESPN is in the business of producing, acquiring, licensing and distributing sports-related cable programming to third-party . . . cable system operators[.]" (Pet'r Br. Supp. Mot. Summ. J. ("Pet'r Br.") at 1.)

2

prohibiting public access to some of the designated evidence it had just submitted. Specifically, ESPN Productions sought to have the copies of its Indiana Adjusted Gross Income Tax Returns filed for the years at issue, as well as a copy of a Production Services Agreement it had with ESPN, sealed. (See Pet'r V. Req. Order Prohibiting Pub. Access Info. Ct. R. ("Pet'r Req.") at ¶¶ 2, 5 (referring to Pet'r Des'g Evid. Supp. Mot. Summ. J. ("Pet'r Des'g Evid."), App. A, Ex. 1, App. B, Exs. 1-4).) On February 11, 2015, ESPN Productions amended its request to include two Cable Television License Agreements and a copy of a document it referred to as its Supplement to Protest. (Pet'r Am. V. Req. Order Prohibiting Pub. Access Info. Ct. R. ("Pet'r Req. #2") at ¶¶ 3, 5-7 (referring to Pet'r Des'g Evid., App. B., Ex. 14, exs. C, D).)

The Court conducted a hearing on ESPN Productions' request on March 13, 2015. No one from the public appeared at the hearing to testify against sealing the documents. Moreover, the Department did not object to ESPN Productions' request. (See Hr'g Tr. at 20-21.) Additional facts will be supplied when necessary.

## LAW

The general rule in Indiana is that information submitted to state governmental entities, including the courts, can be accessed by the public. Travelers Cas. & Sur. Co. v. U.S. Filter Corp., 895 N.E.2d 114, 115 (Ind. 2008). To promote such accessibility, the Indiana General Assembly has enacted the Access to Public Records Act (APRA), Indiana Code § 5-14-3-1 et seq., which guarantees that "all persons are entitled to full and complete information regarding the affairs of [their] government." IND. CODE § 5-14-3-1 (2015). Likewise, the Indiana Supreme Court has adopted Indiana Administrative Rule 9

3

to secure the public's access to court records.[2]  See Ind. Administrative Rule 9(A).

Nonetheless, there are "'public policy interests that are not always fully compatible with unrestricted access.'"  Travelers, 895 N.E.2d at 115.  Indeed, "unrestricted access to certain information . . . could result in an unwarranted invasion of personal privacy or unduly increase the risk of injury to individuals and businesses."  Admin. R. 9(A) (Commentary).  Accordingly, both APRA and Administrative Rule 9 set forth certain exceptions to the general rule of public access, tax returns and trade secrets being two of them.  See IND. CODE § 5-14-3-4(a)(1), (4) (2015); IND. CODE §§ 6-8.1-7-1, -3 (2015); Admin. R. 9(G)(2)(b); Bobrow v. Bobrow, 810 N.E.2d 726, 732-33 (Ind. Ct. App. 2004) (explaining that such exceptions are mandatory).

Generally, there are certain procedures a court must follow before granting a request to shield information from public access under either Indiana Code § 5-14-3-5.5 or Administrative Rule 9.  Most notable among these are the court's duty 1) to conduct a public hearing on the request and 2) to subsequently issue an order that specifically outlines why the need for privacy outweighs the strong public policy that would otherwise allow access to such records.  See IND. CODE § 5-14-3-5.5(c),(d) (2015); Admin. R. 9(G)(4)(a)-(d).  When, however, the documents sought to be protected fall within the mandatory exceptions set forth in APRA or Administrative Rule 9, a court can seal those records without holding such a hearing and balancing the competing interests.  See Bobrow, 810 N.E.2d at 734.  Compare Admin. R. 9(G)(2)(b) with 9(G)(4).

---

[2] A court record "means both Case Records and Court Administrative Records."  Ind. Administrative Rule 9(C)(1).  A case record is "any document, information, data, or other item created, collected, received, or maintained by a Court . . . in connection with a particular case." Admin. R. 9(C)(2).  A court administrative record is "any document, information, data, or other item created, collected, received, or maintained by a Court . . . pertaining to the administration of the judicial branch of government and not associated with any particular case."  Admin. R. 9(C)(3).

4

## ANALYSIS

### A. ESPN Productions' Tax Returns

ESPN Productions seeks to have the tax returns it filed for the years at issue and which it designated as evidence for purposes of its summary judgment motion sealed and protected from public access pursuant to Indiana Code § 5-14-3-4 and Indiana Administrative Rule 9. (Pet'r Request at ¶¶ 5, 21.) (See also Pet'r Des'g Evid., App. B, Exs. 1-4.) ESPN Productions' Request as to these documents is GRANTED. See I.C. § 5-14-3-4(a)(1) (providing that information declared confidential by state statute shall not be disclosed to the public under APRA); I.C. § 6-8.1-7-1(a) (explaining that information disclosed on a taxpayer's tax return shall not be divulged to the public and is thus confidential); I.C. § 6-8.1-7-3 (providing not only that a person who divulges such information commits a Class C misdemeanor, but if that person is an officer or employee of the state, he shall be immediately dismissed from his office or employment); Admin. R. 9(G)(2)(b) (stating that information contained in case records is excluded from public access when it is excluded from public access or declared confidential by Indiana statute).

### B. Production Services Agreement

ESPN Productions also seeks to have the copy of the Production Services Agreement it has with ESPN sealed and protected from public access. It claims that because this document contains information about its business model as well as its production pricing, it contains trade secrets and is therefore mandatorily exempt from public disclosure under Indiana Code § 5-14-3-4 and Indiana Administrative Rule 9. (Pet'r Req. at ¶¶ 5, 11-14; Hr'g Tr. at 9-10, 13.) Of course, the Court must determine whether the document actually contains trade secrets independent of ESPN Productions' claim.

5

See PrimeCare Home Health v. Angels of Mercy Home Health Care, LLC, 824 N.E.2d 376, 381 (Ind. Ct. App. 2005) (stating that what constitutes trade secret information is determined by a court as a matter of law).

A trade secret is

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

IND. CODE § 24-2-3-2 (2015). See also IND. CODE § 5-14-3-2(q) (2015) (stating that for purposes of APRA, the term "'[t]rade secret' has the meaning set forth in IC 24-2-3-2"); Admin. R. 9(A)(1) (explaining that unless otherwise provided, access to court records under Administrative Rule 9 is governed by the provisions of APRA). Based on this statutory definition, Indiana courts have long held that a trade secret has four general characteristics: 1) it is information; 2) that derives independent economic value; 3) from not being generally known, or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use; and 4) that is the subject of efforts, reasonable under the circumstances, to maintain its secrecy. See, e.g., Ackerman v. Kimball Int'l, Inc., 634 N.E.2d 778, 783 (Ind. Ct. App. 1994), vacated in part, adopted in part, 652 N.E.2d 507 (Ind. 1995). The protection afforded to trade secrets under APRA and Administrative Rule 9 helps to foster a healthy, competitive marketplace. See Bridgestone Americas Holding, Inc. v. Mayberry, 878 N.E.2d 189, 192 (Ind. 2007) (stating that "[u]nlike other assets, the value

of a trade secret hinges on its secrecy. As more people or organizations learn the secret, [its] value quickly diminishes").

The Production Services Agreement contains trade secrets. First, the Production Services Agreement contains information because it details the terms and conditions between the parties to the agreement, ESPN Productions and ESPN. (See, e.g., Pet'r Des'g Evid., App. A, Ex. 1; Hr'g Tr. at 13.) Next, that information has independent economic value for the parties because it identifies the specific services ESPN Productions provides to ESPN and what it charges for those services. Moreover, that value is dependent on not being generally known or readily ascertainable to competitors. For instance, ESPN Productions explains that with respect to the information related to its business model,[3] "if competitors could figure out how to replicate [our] model in terms of how to produce content . . . [it] would impair [our] revenue stream." (Hr'g Tr. at 13.) Similarly, ESPN Productions explains that what it charges ESPN for its services

> is a factor in the license[ and] the royalty rates that [ESPN is] charging third parties, hence knowledge of what it costs to produce some of the content . . . affects the pricing information that is eventually charged to third parties by ESPN[. It] would be detrimental [] if that [information] were disclosed . . . in terms of competitiveness and the value of the information. So it is a building block as part of the large broader scheme in that sense.

(Hr'g Tr. at 10-11.) Finally, ESPN Productions has taken reasonable efforts to maintain the secrecy of this information by including within the Production Services Agreement itself a clause that treats everything it develops for ESPN as confidential. (See Hr'g Tr. at 11-12; Pet'r Des'g Evid., App. A, Ex. 1 at 4-5.) Accordingly, the Court GRANTS ESPN Productions' request that the Production Services Agreement be protected from public

---

[3] The business model information contained in the Production Services Agreement "sets forth cost structure, staffing, [and] areas of expertise in terms of what goes into making [ESPN Productions' product for ESPN]." (Hr'g Tr. at 13.)

disclosure under both APRA and Administrative Rule 9.

### C. Cable Television License Agreements and Supplement to Protest

ESPN Productions also seeks to protect from public access and place under seal two Cable Television License Agreements and a copy of its Supplement to Protest. Again, it claims that these documents contain trade secrets – in the form of pricing information – and are therefore mandatorily exempt from public disclosure under Indiana Code § 5-14-3-4 and Indiana Administrative Rule 9. (Pet'r Req. #2 at ¶¶ 7, 14, 17.)

### 1. Cable Television License Agreements

The Court finds that the two Cable Television License Agreements ESPN Productions submitted as designated evidence contain trade secrets. Specifically, they set forth the rights and duties of the licensees, Comcast Corporation and Verizon Services, to uplink and distribute ESPN's programming. (See, e.g., Pet'r Des'g Evid., App. B., Ex. 14, exs. C at 1, D at 1.) Included within that information is the pricing/royalty rates ESPN charges for those licenses. (See, e.g., Pet'r Des'g Evid., App. B., Ex. 14, exs. C at 15-19, D at 8-10; Hr'g Tr. at 8.) Similar to the analysis above, this pricing information derives independent economic value and additional value from not being generally known because if ESPN's competitors were privy to that information, they could use it to gain an economic advantage over ESPN. (See Hr'g Tr. at 8-9.) Moreover, each of the two Cable Television License Agreements includes a confidentiality clause for the purpose of keeping this information secret. (See Pet'r Des'g Evid., App. B., Ex. 14, exs. C at 29, D at 18.) Because the Cable Television License Agreements contain trade secrets, the Court hereby GRANTS ESPN Productions' request that they be protected from public disclosure under both APRA and Administrative Rule 9.

**2. Supplement to Protest**

Finally, ESPN Productions seeks to seal a portion of the document it refers to as its Supplement to Protest, which is a letter from ESPN Productions to the Department dated June 26, 2013. (See Pet'r Des'g Evid., App. B., Ex. 14.) ESPN Productions requests that two quotes from the Cable Television License Agreements referred to above be protected from public access through redaction from the letter. (See Hr'g Tr. at 15-18, 24.) The Court, however, DENIES that request, as the quotations do not contain any business model or pricing information; rather, the quotations merely and innocuously state the general purpose of the Cable Television License Agreements themselves (i.e., that those documents allow the specified licensees to uplink and distribute ESPN's programming). (See Pet'r Des'g Evid., App. B., Ex. 14 at 3.) That information is already readily ascertainable from the public documents filed in this case. (See, e.g., Pet'r Br. at 2, 6; Hr'g Tr. at 15-16.)

**CONCLUSION**

The tax returns, Production Services Agreement, and Cable Television License Agreements submitted by ESPN Productions as designated evidence in support of its motion for summary judgment are protected from public disclosure under both APRA and Administrative Rule 9(G)(2). That protection does not extend, however, to ESPN Productions' Supplement to Protest.

Accordingly, the Clerk of the Tax Court is ORDERED to return any green copies of the Supplement to Protest (Pet'r Des'g Evid., App. B., Ex. 14) to ESPN Productions. ESPN

Productions may, if it so chooses, resubmit the Supplement to Protest as a public access document.

SO ORDERED this 9th day of April 2015.

_____

Martha Blood Wentworth, Judge
Indiana Tax Court

DISTRIBUTION:

Randal J. Kaltenmark, Ziaaddin Mollabashy, Michael H. Salama, Jeffrey M. Vesely, Annie H. Huang, Evan W. Bartel, Jessica E. Reagan, Andrew T. Grein.